MILLER *v.* HOWARD.

(*Knoxville.* October 10, 1895.)

BANKS AND BANKING. *Director's liability for deposits.*

The directors of a bank are personally liable for a deposit made during a suspension of payment upon faith of a circular issued by them that such deposits would be kept, subject to the depositor's orders, in the vaults of the bank, where they allow the receiver for the bank, subsequently appointed, to take possession of the same.

FROM RHEA.

Appeal from Chancery Court of Rhea County. T. M. McCONNELL, Ch.

BURKETT, MILLER & MANSFIELD for Miller.

WHEELER & McDERMOTT for Montague.

A. P. HAGGARD for Howard.

R. P. ABEL for Abel.

WILKES, J. This is an action against three directors of the First National Bank of Dayton, seeking to hold them individually responsible for the amount of a special deposit made by complainant in

said bank. The Chancellor held them liable, and gave judgment against them for the amount of the deposit and interest, and they have appealed and assigned errors.

The facts, so far as necessary to be stated, are that the First National Bank of Dayton, Tennessee, was a banking association, under the laws of the United States, with a capital stock of $50,000, and defendants, with others, were directors of the same. Owing to the general financial trouble in the country, it suspended payment, on August 22, 1893, under a resolution of its board of directors. These directors issued a circular at the time of said suspension, intended for its depositors and the general public, giving their reasons for the suspension, and announcing that they hoped to be able to resume business regularly in sixty days, and in the meantime the bank officers were directed to receive on deposit any funds that might be deposited, and to keep such funds in the bank vaults subject only to the check of parties depositing the same, and for no other purpose. The circular further stated that the bank was in a perfectly solvent condition, having solvent assets more than double its liabilities, in addition to the liability of its stockholders, to an amount equal to their stock under the law.

Complainant's insistence, supported by his own testimony and other evidence, is that he relied upon the statements of this circular and the integrity of the officials of the bank, and, in consequence, made

special deposits from time to time, from August 22, 1893, to October 18 following, upon which he was allowed to check as he saw proper. And on October 18, 1893, he had to his credit of such special deposit a balance of $186.83. On this date the directors procured a receiver to be appointed by the comptroller of the currency, who, a few days thereafter, took charge of the bank and all its property, and, among other funds, by the active assent and direction of the board, the said receiver took possession of the special deposits in the bank, including that of complainant.

It appears from the evidence that these special deposits, amounting in all to about $1,600, were placed in the vault of the bank in separate packages, labeled with the amounts and owner's names, and in this shape were turned over to the receiver, along with all the assets and property of the bank, and they were sent to Washington, to the Comptroller of the Currency, and were afterwards treated and paid out as general deposits or assets of the bank upon its liabilities; that the bank was really insolvent when the circular was issued, and that its debts have been only partially paid by its assets and property.

The complainant, at or about the time of the receivership, gave his check for the amount of this balance due him, and it was presented to the receiver for payment, and the entire matter was explained to him, but he refused to honor the check, and it was

protested for nonpayment, and complainant has received nothing upon account of it, either from the bank or the receiver. Complainant, at the same time, applied to the cashier of the bank for payment of the check out of the special deposit, but was answered that the deposits had been turned over to the receiver by order of the board of directors, and he could do nothing in the matter.

The bill was demurred to, and the demurrer was overruled, and need not be specially noticed.

The defendants, in their answer, state that they acted in good faith in the matter, and for what they deemed the best interest of the bank and its depositors; that the deposits placed in the bank during the suspension were ,strictly "special deposits" placed in separate packages, and labeled with the names of the respective owners, and kept separate from the assets and funds of the bank, and, among the others, was this deposit of the complainant.

The contention of complainant is, that his funds, being a special deposit, was his own property, and was wrongfully turned over to the receiver by order of the defendants and the other directors, and was thus lost to him. The defendants, admitting the title and ownership of complainant, insist that they were in no fault in permitting the special deposits to go into the receiver's hands, and that complainant, in any event, could and should have reclaimed and secured the same from the receiver, and that they could not be required to look up the several

special depositors and redeliver their deposits to them, and that, in any event, such action as was taken, was the action of the bank as a corporation, for which they, as directors, were not individually liable, and, finally, if any duty devolved upon the officials of the bank, it was upon the president and cashier, and not the directors, to make return of the special deposits.

There can be but little question, under the facts of this case, that a duty devolved upon the board of directors, after having received these deposits under the terms of the circular, to return them to the parties to whom they belonged, and that it was easy and feasible to make such returns, and the act of the directors in turning them over to the receiver, or allowing them to go into his hands under their own application, was a breach of their duty and of their contract as contained in the circular. It was no part of the functions of the bank, as a national bank, to receive such deposits, except by order of the board of directors, and they were not in any sense assets of the bank, to be turned over to a receiver for general distribution. Neither could the directors, by delivering such deposits into the hands of such receiver, relieve themselves of their duty in the premises, and throw upon the depositor the onus of following up the funds and reclaiming them from the receiver. Directors are not mere figureheads, with no duties to perform, and with the liberty of leaving matters of this character to

their president and cashier, and relieving themselves
of liability and duty by placing special funds they
are under obligations to deliver to special depositors
in the hands of third persons, and then leaving it
to their depositors to litigate with such third persons
over their claims and rights.

It is shown in this cause that it was a matter
of importance and benefit to the bank and its officers
to receive these deposits, in order that they might
retain these depositors and accumulate funds in their
vault, so that they could more readily resume their
usual course of business, and it is also apparent that
they might be personally benefited in having the
special deposits go into the hands of the receiver,
to be paid out on the general liabilities of the
bank, thereby, perchance lessening their liability as
stockholders, to make good the deficit by assessment
on their stock, and they were not strictly bailees
without compensation or reward.

This is not a case of want of ordinary care on
the part of the directors, but a case of positive
active misconduct, which resulted in injury to com-
plainant, and for which they are liable to him.

We are of opinion there is no error in the decree
of the Chancellor, and it is affirmed with costs.