Bryan Co. State Bank et al. v. Amer. Nat. Bank of Ft. Worth, Tex., et al.

not result in anything but a verdict and judgment for the defendant.

The order heretofore made in this case reversing the same for failure to .file briefs by the defendant in error is set aside, and the cause reversed, with directions to the trial court to dismiss the cause.

By the Court: It is so ordered.

---

BRYAN COUNTY STATE BANK *et al.* v. AMERICAN NAT. BANK OF FT. WORTH, TEX., *et al.*

No. 6225.    Opinion Filed March 21, 1916.

(156 Pac. 352.)

1. **BANKS AND BANKING—Liens on Stock—Debt of Manager— Pledge.** A bank is not entitled to a lien upon the stock owned by its active manager for money loaned by it to him in violation of the law of this state, as against a pledgee of said stock who did not have any knowledge of the existence of the debt due the bank by its active manager at the time the stock was pledged to him.

2. **SAME.** A pledgee of bank stock is not guilty of laches by failing to inquire of the bank if it had loaned any money to its active manager where it is a violation of law to do so, but he is justified in assuming that the law has not been violated.

(Syllabus by Hooker, C.)

*Error from District Court, Bryan County;*
*Jesse M. Hatchett, Judge.*

Action by the American National Bank of Fort Worth, Texas, and another, against Bryan County State Bank and others. Judgment for plaintiffs, and defendants bring error. Affirmed.

*McPherren & Cochran,* for plaintiffs in error.

*E. F. Nicholds* and *Richard Nicholds,* for defendants in error.

Opinion by HOOKER, C. The American National Bank on January 24, 1912, filed an action in the district court of Bryan county, wherein it alleged that on or about the 14th day of February, 1910, Edward D. Bennett and H. M. Dunlap became indebted to it, and to secure the payment of said indebtedness, and as collateral security therefor, delivered to it fifteen shares of capital stock of the Bryan County State Bank as shown by certificate No. 57, a copy of which certificate was attached to the petition in said case, and thereafter said parties executed and delivered to it their promissory note in writing, which note was a renewal note given for the indebtedness contracted in February, 1910, as above stated, and that in order to secure the payment of said indebtedness, and as collateral security therefor, the said defendants permitted the plaintiff to continue to hold the said shares of stock upon an agreement that the same were to be held as collateral security for the payment of said debt; that said defendants did not pay said note, and that the note was past due, and that said defendants were justly due the plaintiffs the amount thereof with attorney's fees. In this action the plaintiffs sought to be adjudged the owner of, or to have a lien upon, said stock for the purposes aforesaid.

To this action the Bryan County Bank filed an answer consisting of a general denial and the additional claim that it did not consent to the said H. M. Dunlap pledging to the plaintiff the shares of stock held by him in said bank, and that it at no time had any notice of the plaintiff's claim or interest in said stock until long after June 6,

1911, and that the said H. M. Dunlap was, prior to February 19, 1910, and was at the time of the trial of said action in the court below, indebted to the Bryan County State Bank in a sum of money in excess of $7,800, which indebtedness was represented by promissory notes of said Dunlap held by the bank and which had been reduced to judgment, and that the said Dunlap was a stockholder in said bank and the registered holder of the stock involved in this action upon the books of said bank, and that no transfer of said stock had been made upon the books of the bank to the plaintiff or any one else, and that by virtue of the provision of the by-laws of the bank the stock of the bank could be assigned only on the books of the bank, and that the Bryan County Bank, under the law of the State of Oklahoma, had a lien superior to the claim of the plaintiff upon the stock of the said H. M. Dunlap to secure the payment of the indebtedness due by him to said bank, which lien was superior to the claim of the plaintiff in this action, to which answer a reply of general denial was filed.

This cause was tried in the court below upon an agreed statement of facts as follows:

"It is agreed by all the parties to the above styled and numbered cause: That the majority of the capital stock of the said Bryan County State Bank stood in the name of H. M. Dunlap at the time this loan was made and stock hypothecated, and that Mr. Dunlap was the president of the Bryan County State Bank from its organization until July 26, 1910, and was at all times a director in the said bank. That the certificate of stock involved in this case, being No. 67, now stands, and at all times since December 31, 1908, has stood in the name of H. M. Dunlap, and that no request to the officers of the said bank has at any time been made to transfer the same to the name of any other person or corporation as owner. That,

so far as this case is concerned, it is stipulated that, after the said stock was by the said Dunlap hypothecated to the plaintiff bank, he assigned all interest therein to the defendant Bennett.

"It is further stipulated that prior to and at the time the plaintiff bank loaned to the said defendant Bennett the sum of money herein involved, the said H. M. Dunlap was indebted and is still indebted to the said Bryan County State Bank in the sum of $7,800, with interest, but the plaintiff had no actual knowledge of such indebtedness. It is further stipulated and agreed: That on the 21st day of January, 1911, the Bryan County State Bank went into liquidation, and thereafter S. W. Maytubby was appointed liquidating agent, and that the assets of the said Bryan County State Bank were insufficient to pay to the stockholders thereof the par value of the stock of the said bank. That on the 1st day of February, 1908, H. M. Dunlap was elected president, John T. Pettey vice president, and H. Edwards cashier of the said bank, by the board of directors thereof, and the duties of the said officers fixed by resolution, as follows:

" 'Resolved, that the duties of the president of this bank be such as are defined in the banking laws of the State of Oklahoma; that he act in an advisory capacity with the other officers of said bank, and that he render every service that occurs to him for the good of such bank, and that he act generally in an advisory capacity with the other officers thereof.

" 'That the duties of the first vice president of this bank be, in connection with the cashier, the active management of such bank, and charge of all the details of its management; that he and the cashier together shall constitute the discount committee, and shall pass upon all loans made by the bank, advising with the president when deemed necessary, and subject to the supervision of the board of directors, and to preside at all meetings in the absence or disqualification of the president, and to other-

wise in the absence of the president perform all the duties devolving, either by law or by-laws, upon the president.'

"That on July 27, 1908, the board of directors of said bank fixed the salaries of the officers of the said bank as follows: The president, $1,500 per annum; the first vice president, $1,500 per annum; the cashier and secretary, $900 per annum; the assistant cashier, $780 per annum.

"That on January 27, 1908, the board of directors of the Bryan County State Bank adopted by-laws for the government of the bank, sections 13 and 14 of which are as follows:

" 'Sec. 13. The stock of this bank shall be assigned only on the books of this bank, subject to the provisions and restrictions of the banking laws of Oklahoma, and a transfer book shall be kept in which all assignments and transfers of stock shall be made. Transfer of stock shall not be suspended preparatory to a declaration of a dividend, except in case of an agreement to the contrary. Dividends shall be paid to stockholders in whose name the stock shall stand on the date on which the dividends are declared.

" 'Sec. 14. Certificates of stock signed by the president and secretary may be issued to the stockholders, and the certificate of stock shall state upon the face thereof that the stock is transferable upon the books of the bank, and when any stock is transferred the certificates thereof shall be returned to the bank and canceled, and new certificates issued.'

"That on February 1, 1908, the following resolution was passed by the board of directors of said bank:

" 'Resolved, that the officers and directors of this bank be allowed the amount of credit hereinafter stated opposite the name of each.

" 'J. B. Moore, $8,000.00; H. M. Dunlap, $8,000.00; W. H. Ainsworth, $5,000.00; W. H. Attaway, $5,000.00; H. T. Chiles, $8,000.00; and upon the same terms and conditions

Bryan Co. State Bank et al. v. Amer. Nat. Bank of Ft. Worth. Tex., et al.

as others of like circumstances are allowed such credit and such discount committees are hereby so authorized.'

"That on the 12th day of January, 1909, the board of directors of the said bank elected H. M. Dunlap as president, John T. Pettey as first vice president, W. H. Ainsworth second vice president, Henry Edwards, cashier and secretary, and H. W. Wells as assistant cashier, for the ensuing twelve months, and the salaries of the salaried officers were fixed as follows:   First vice president, $1,500 per annum; cashier and secretary, $1,200 per annum; assistant cashier, $1,080 per annum.

"On January 11, 1910, the board of directors adopted the following resolution:  'Resolved that the officers and directors of this bank be allowed the amount of credit hereinafter set opposite the name of each:   H. M. Dunlap, $8,000; W. H. Ainsworth, $5,000; H. T. Chiles, $8,000; S. W. Maytubby, $2,500; W. G. Ward, $2,500—upon the same terms and conditions as others in like circumstances are allowed such credit.'

"That on July 26, 1910, at a meeting of the board of directors of the said bank, W. H. Attaway was elected president, vice H. M. Dunlap, resigned; A. F. Manning, first vice president; H. M. Dunlap, second vice president; and Henry W. Wells as cashier, vice Henry Edwards, resigned; and the active vice president and the cashier were voted a salary of $100.00 per month.

"The stipulations heretofore signed in this cause, and which are hereto attached as a part of this statement of facts, are hereby submitted to the court as the agreed statement of facts covering this cause.

"E. F. NICHOLDS,
        "Atty. for Plaintiff.

"McPHERREN & COCHRAN,
        "Attys for Defendants."

"The American National Bank of Ft. Worth, Tex., is a corporation duly incorporated under and by virtue of the

laws of the United States, and is engaged in the banking business at Ft. Worth, Tex.

"The Bryan County State Bank of Caddo, Okla., is a corporation duly incorporated under the laws of the State of Oklahoma, and was organized on or about the 27th day of January, 1908, with a capital stock of $40,000 fully paid, and began operation, as a bank at Caddo, Okla., on or about the 1st day of February, 1908.

"That the Bryan County State Bank has ceased to do a banking business and is now in process of liquidation, and S. W. Maytubby of Caddo, Okla., is the liquidating officer thereof, and that all depositors have been fully paid. That it owes no debts, and its assets belong to the stockholders.

"That the Security State Bank of Caddo, Okla., is a corporation incorporated under and by virtue of the laws of the State of Oklahoma, with its office at Caddo, Okla.

"That Edw. D. Bennett resides in Caddo, Bryan county, Okla.

"It is admitted: That the said Edw. D. Bennett is indebted to the American National Bank in the sum of $1,200, with interest thereon from February 12, 1911, at the rate of 8 per cent. per annum, and $120 as attorney's fee, and that said debt is secured by 15 shares of the capital stock of the Bryan County State Bank, as shown by certificate No. 67, and that said certificate is held by the plaintiff herein. That said debt was first contracted and made on or about February 19, 1910, at which time said stock was delivered as security, and has ever since been held by plaintiff to secure said debt, which had been renewed from time to time and which debt was due and unpaid at the time of the filing of this suit, and is still due and unpaid. That said note or debt was for money loaned by the plaintiff to the defendant, Edw. D. Bennett. The plaintiff had no actual notice of any claim on the part of others to said stock. That the said Edw. D. Bennett was the principal maker of the note sued on, and that

H. M. Dunlap signed the same as surety. That the said certificate for 15 shares of the capital stock of the Bryan County State Bank of Caddo, Okla., was issued to H. M. Dunlap, on December 31, 1908, having been transferred to him by Julia Hancock, and the same was a part of certificates Nos. 6, 7, and 8, issued by the said Bryan County State Bank to C. A. Hancock on January 29, 1908, and transferred by him to the said Julia Hancock.

"This does not preclude either party from adding such other and further evidence as may be material.

> "E. F. NICHOLDS,
> "Atty. for Plaintiff.

> "E. D. BENNETT,
> "McPHERREN & COCHRAN,
> "Attys. for Defendant Bank."

The provisions of the banking law of Oklahoma, as in force at the time of the transactions involved in this action, may be found in Rev. Laws 1910, secs. 262, 264, 266, 268, 270, 273, 282, 294, 295, which are as follows:

"262. *Officers—Election, Duties and Liabilities.* The affairs and business of any banking association organized under the laws of this state shall be managed or controlled by a board of directors of not less than three nor more than thirteen in number, who shall be selected from the stockholders, at such time and in such manner as may be provided by the by-laws of the association. No person shall be eligible to serve as director of any bank organized or existing under the laws of this state unless he shall be a *bona fide* owner of five hundred dollars of the stock of such bank, fully paid and not hypothecated. Any director, officer or other person who shall participate in any violation of the laws of this state, relative to banks and banking, shall be liable for all damages which the said bank, its stockholders, depositors or creditors shall sustain in consequence of such violation. The board shall select from among their number the president and secretary, and

shall select from among their stockholders a cashier. Such officers shall hold their offices for a term of one year and until their successors are elected and qualified. The board shall require the cashier and any and all officers having the care of the funds of the bank to give a good and sufficient bond, to be approved by them, and held by the State Banking Board. The board of directors shall hold at least two regular meetings each year, and at such meetings a thorough examination of the books, records, funds and securities held by the bank shall be made and recorded in detail upon its record book, and a certified copy thereof shall be forwarded to the Bank Commissioner and to each stockholder of record within ten days."

"264. *Charter Forfeited, When.* The violation of any of the provisions of this chapter by the officers or directors of any bank organized or existing subject to the laws of this state shall be sufficient cause to subject the said bank to be closed and liquidated by the Bank Commissioner and for the annulment of its charter."

"266. *Securities and Disposition Thereof.* No bank shall employ its moneys, directly or indirectly, in trade or commerce, by buying or selling goods, chattels, wares or merchandise, and shall not invest any of its funds in the stock of any other bank or corporation, nor make any loans or discount on the security of the shares of its own capital stock, nor be the purchaser or holder of any such shares, unless such securities or purchase shall be necessary to prevent loss upon a debt previously contracted in good faith; and stock so purchased or acquired shall, within six months from the time of its purchase, be sold or disposed of at public or private sale, and after the expiration of six months any such stock shall not be considered as part of the assets of any bank: Provided, that it may sell any personal property which may come into its possession as collateral security for any debt or obligation due it, upon posting a notice in five public places in the county wherein the property is to be sold, at least ten days before the time therein specified for such sale, and which

said notice shall contain the name of the bank and the name of the pledgor, the date of the pledge, the nature of the default and the amount claimed to be due thereon at the date of the notice; a description of the pledged property to be sold and the time and place of sale."

"268. *Liability of One Person Limited.* The total liabilities to any bank of any person, corporation or firm, for money borrowed, including in the liabilities of such company or firm the liabilities of the general stockholders, officers or members thereof, shall not at any time exceed twenty per cent. of the capital stock of such bank; but the discount of bills of exchange drawn in good faith against actual existing values, as collateral security and a discount of commercial or business paper, actually owned by the person, shall not be considered as money borrowed."

"270. *Loans to Officers.* It shall be unlawful for any active managing officer of any bank organized or existing under the laws of this state to borrow, directly or indirectly, money from the bank with which he is connected; and the officer making or authorizing a loan to any such person, as well as the person receiving the same, shall be deemed guilty of a larceny of the amount borrowed."

"273. *Banks to Make Reports.* Every bank shall make at least four reports each year, and oftener if called upon by the Bank Commissioner and according to the form which may be prescribed by him, verified by the oath or affirmation of the president or cashier of such association, and attested by the signature of at least two of the directors. Each such report shall exhibit, in detail and under appropriate heads, the resources and liabilities of the association at the close of business on any past day by the Bank Commissioner specified, and shall be transmitted to the Bank Commissioner within ten days after the receipt of a request or requisition therefor by him, and shall be published at the expense of the bank in the same form in which it is made to the Bank Commissioner within ten days after the same is made,

by two insertions in a newspaper published in the county in which such bank is established; and such proof of publication shall be furnished within five days after date of last publication, as may be required by the Bank Commissioner. The Bank Commissioner shall also have power to call for special reports from any bank, whenever, in his judgment, the same are necessary, in order to gain a full and complete knowledge of its condition. Provided, that the reports authorized and required by this section to be called for by the Bank Commissioner shall relate to a date prior to the date of such call, to be specified therein."

"282. *Penalty for Violations.* Every banker, officer, employee, director or agent of any bank who shall neglect to perform any duty required by this chapter, or who shall fail to conform to any lawful requirements made by the Bank Commissioner, shall be deemed guilty of a felony, and upon conviction thereof shall be punished by a fine not to exceed one thousand dollars, or by imprisonment in the penitentiary not to exceed five years, or both such fine and imprisonment."

"294. *Shares. Personal Property—Transfer.* The shares of stock of an incorporated bank shall be deemed personal property, and shall be transferred on the books of the bank in such manner as the by-laws therefor may direct, but no transfer of stock shall be valid against a bank or any creditor thereof so long as the regular holder thereof shall be liable as a principal debtor, surety or otherwise to the bank for any debt, nor in such cases shall any dividend, interest or profits be paid on such stock so long as such liabilities continue, but all such dividends, interests or profits shall be retained by the bank and applied to the discharge of such liabilities, and no stock shall be transferred on the books of any bank where the registered holder thereof is in debt to the bank for any matured and unpaid obligations.

"295. *Bank Cannot Loan on its Stock—Loans to Stockholders.* It shall be unlawful for any bank to loan

its funds to its stockholders on their stock as collateral security; and the total indebtedness of the stockholders of any bank shall at no time exceed fifty per cent. of its paidup capital: Provided, that any bank may hold its stock to secure a debt previously contracted."

This case involves the priority of liens between the Texas Bank as a pledgee of the stock of H. M. Dunlap and the Bryan County State Bank, which attempts to assert a lien under the provisions of the law above quoted for an indebtedness due by Dunlap to the bank. It is conceded that the Texas Bank had no actual knowledge of the indebtedness due by Dunlap to the Bryan County State Bank, nor did the Bryan County Bank or any official thereof, other than Dunlap himself, have any knowledge of the indebtedness due the Texas Bank or the pledging of the stock by Dunlap to the Texas Bank to secure the payment of said debt. It is contended in this action by the Texas Bank that it has the first lien upon said stock, notwithstanding the law in force in Oklahoma at the time its debt was created and the stock pledged by Dunlap to it to secure its debt provided that the Bryan County Bank should have a lien upon the stock of its stockholders to secure any indebtedness due by the owners of the stock to it, and it must be borne in mind that Dunlap was at the time of these transactions not only a stockholder, but the president and a director in the Bryan County Bank. The basis of the claim of the Texas Bank is that, notwithstanding the Bryan County Bank had the lien stated above, yet, because of the fact that Dunlap was the president and a director in the Bryan County Bank, it had the right to and did rely upon the provisions of the Oklahoma law which prohibited the Bryan County Bank from lending any of its money to Dunlap as provided by section

.270, Rev. Laws 1910, and that therefore, if the Bryan
County Bank violated this provision of the Oklahoma law
and did lend its money to Dunlap, it should not be per-
mitted to assert a lien upon this stock to the prejudice
of the Texas Bank, which created its indebtedness with
Dunlap relying upon the observance of the Oklahoma law
by the Bryan County Bank.  To this claim, however, the
Bryan County Bank replies that it did not violate the law,
for that, while Dunlap was its president and a director
and owned a majority of the stock therein, he was not an
active, managing officer of the bank, for under its by-laws
the active management of the bank was vested in other
parties, and that therefore the loan to Dunlap was proper
and within the authority of the bank.

In order, however, to determine this question, we must
first ascertain what relation Dunlap held to the bank.
If he was simply a stockholder and not an active, manag-
ing officer, then it was within the province of the bank to
make a loan to him.  However, if he was one of the active,
managing officers, the loan by the bank was in violation
of law and was an act prohibited by the banking law of
the state.

The agreed statement of facts discloses that Dunlap
owned a majority of the stock in this bank; that he was
its president; and that as such president it was his duty
to preside over meetings of the board of directors; and
that he was also one of the directors of the bank, and the
resolutions enacted by the Bryan County Bank on the
13th day of February, 1908, determine that:

"The duties of the president of this bank shall be
such as are defined in the banking laws of the State of
Oklahoma; that he act in an advisory capacity with the
other officers of said bank and that he render every service

that occurs to him for the good of such bank and that he act generally in an advisory capacity with the other officers thereof."

Under these resolutions, it is, to our mind, clear that it was intended that H. M. Dunlap, as the president of this bank, should have, and did have, supervision over every act of the bank, and under the law of this state as defined in section 282, Rev. Laws 1910, it was his duty as such president to exercise the powers conferred upon him, and, by that provision of the law above quoted, his failure so to do is a felony. It is to be presumed that as the president (and as an official) of this bank he performed his duty. To us it is inconceivable to say that one who owns a majority of the stock in a bank, who is a member of the board of directors, and who is the president of the bank, and, as such, chairman of the board of directors, coupled with the special delegation of authority set forth in the resolution above quoted, is not an active, managing officer of said bank. It is clear that one of the main purposes of the banking laws of the State of Oklahoma is to impose upon the officers of the bank, such as the president or director, the positive duty of its management and control and to fix upon these officers the duty and responsibility of conducting said bank in accordance with law, and this court should be slow to adopt any construction of law which would relieve these officers from their responsibility. The purposes of the law, coupled with the delegation of the powers contained in the resolution of the board of directors, clearly fix the status of Dunlap as the active, managing officer of said bank.

Having thus determined that Dunlap was the managing officer of the bank, and therefore within the prohibited class to whom money could not be loaned, it is now neces-

sary to determine whether the Texas Bank was justified in refusing or failing to make inquiry of the Bryan County Bank at the time it made said loan as to the condition of the account of Dunlap with the bank as to whether it had or held any indebtedness against him which might create or be a lien upon said stock. In considering this question, the good faith of these parties should enter into our deliberations. The Texas Bank knew the position that Dunlap occupied with the Bryan County Bank. It knew that he was within the prohibited class to whom money could not be loaned, and it had every reason to believe that the officers of the Bryan County Bank would not violate the banking laws of the State of Oklahoma, and loan to the active, managing officer of the bank, money, and, although it knew that the bank might, under certain conditions, have a lien upon the stock of its stockholders for any indebtedness due by them to it, still, in our judgment, it was justified in assuming that the Bryan County Bank had been conducted in conformity to the laws of the state, and it was therefore under no legal or moral obligation to inquire of the Bryan County Bank if it had violated the law of the State of Oklahoma by permitting its president to become indebted to it, and it cannot be urged with any degree of consistency that the Bryan County Bank acted in good faith in the creation of the debts by Dunlap to it.

There being no obligation on the part of the Texas Bank to make any inquiry, it cannot be estopped in any way by its failure to ascertain the condition of the indebtedness on the part of Dunlap to the Bryan County Bank. That the act of Dunlap in pledging this stock to the Texas Bank constituted an equitable assignment of the

544 SUPREME COURT OF OKLAHOMA.

Bryan Co. State Bank et al. v. Amer. Nat. Bank of Ft. Worth, Tex., et al.

stock to the bank is amply supported by the authorities cited in 67 L. R. A. page 672, note 4, and the authorities cited in *Eubank v. Bryan County State Bank,* 216 Fed. 839, 840, 133 C. C. A. 43, 44.

Under our view of the law of this case, the American National Bank of Ft. Worth is entitled to prevail, and, in support of our conclusion, we desire to cite the case of *Eubank v. Bryan County State Bank,* 216 Fed. 833, 133 C. C. A. 37, the syllabus of which opinion is as follows:

"The banking laws of Oklahoma (Rev. Laws 1910, sec. 262) provide that the affairs and business of any banking association organized thereunder 'shall be managed or controlled by a board of directors'; by section 270, that it shall be unlawful for 'any active managing officer * * * to borrow directly or indirectly money from the bank with which he is connected,' and that both the officer receiving and the one making such a loan shall be deemed guilty of larceny; and, by section 294, that no transfer of stock shall be valid as against the bank 'where the registered holder thereof is in debt to the bank for any matured and unpaid obligation; in effect giving the bank a lien on the stock for such debt. *Held,* that a director of a bank is an 'active managing officer' within the meaning of section 270, and cannot be relieved from responsibility as such by action of the other directors, and consequently that a loan of money made by the bank to him is illegal, and the bank cannot assert a lien on his stock therefor as against a prior *bona fide* pledgee.

"A good-faith purchaser or pledgee of the stock of a banking corporation to whom the certificates have been duly assigned and delivered is the owner in equity of such stock, though the certificates may not be transferred to him on the books as required by a by-law or rule of the corporation."

Had Dunlap been a stockholder only, and had the loan been made to him as a stockholder within the permis-

sive provisions of the banking laws of the State of Oklahoma, the rule of law announced here would be entirely different, as fully appears from the authority cited by the plaintiffs in error.

We therefore conclude that the trial court was correct in directing a judgment in this case in favor of the defendant in error, and we therefore recommend that the judgment of the lower court be affirmed.

By the Court: It is so ordered.