CREWS et al. v. GARBER.

No. 26529. March 25, 1941.

*111 P. 2d 1080.*

Christie Russell, of Mattoon, Ill., A. F. Moss and H. R. Young, of Tulsa, and M. F. Priebe, of Enid, for plaintiffs in error.

Simons, McKnight, Simons, Mitchell & McKnight, of Enid, for defendant in error.

HURST, J. This action involves the liability of a bank director for failure to

perform his common-law and statutory duties, and the right of the owners of an escrow account to maintain an action against a director for damages caused by the loss of the account due to such failure.

Plaintiffs seek to recover from the defendant Garber, a director and officer in the Farmers State Bank of Garber, losses sustained by them as owners of a special escrow account, known as the "Crews Estate Oil & Gas Producers Escrow," as a result of defalcations by the active officers and other directors of that bank, and the insolvency and failure thereof. The trial court sustained a general demurrer to plaintiffs' amended petition, and plaintiffs appeal.

The amended petition is lengthy, covering some 80 pages of the record, and sets out in detail the wrongful acts and conduct of the active officers of the bank which occasioned the losses complained of. These wrongful acts were alleged to have occurred over a period of approximately eight years, beginning in 1922 and ending in 1930 with the failure of the bank. The defendant is alleged to have been a director of the bank from July 6, 1922, to October 31, 1925, during which time the petition alleges that plaintiffs' losses amounted to some $260,000, and vice president thereof from October 31, 1925, to January 6, 1931, during which period the petition alleges the plaintiffs' losses were some $254,000, and defendant and his brother, B. A. Garber, owned a considerable portion of the bank's stock, and B. A. Garber was the president and active manager. G. J. Taft was also an active officer of the bank. After reciting many acts of defalcation and embezzlement by the bank's officials, and asserting that the bank had been grossly insolvent at all times from January, 1923, until October, 1930, the amended petition avers actual knowledge of such facts and the condition of the bank, by the defendant, in the following language:

"That plaintiff is informed and believes and upon such information alleges the fact to be that said defendant, M. C. Garber, at all times from and after July 6, 1922, knew and had actual knowledge,

in a general way, of all the matters and things hereinbefore alleged, but that he did nothing whatsoever to stop the same, made no objection thereto, but acquiesced therein, and that said defendant, in addition to this actual participation therein, either directly or by his authorized agents, did, by his acquiescence therein, aid and assist therein, and did knowingly and willfully permit the affairs of said Farmers State Bank and of said American National Bank, and each of them, and the said banks and each of them, to be conducted and made use of in such manner, knowing that same and each of them were being so conducted and made use of for the purpose and with the intent of defrauding the plaintiffs, and knowing that same, and each of them were actually accomplishing and effecting such purpose.

"That it was well known by said defendant, M. C. Garber, that said deposit and 'Crews Estate Oil & Gas Producers, Escrow' account, etc., was the largest deposit or account in said bank and that the protection and preservation of same involved substantial responsibility and prudent, careful and honest administration.

"That at all times from the latter part of the year 1922 until October, 1930, the said B. A. Garber and G. F. Taft, and each of them, were engaged in making numerous and hazardous and speculative investments and expenditures far beyond the means of them or either of them and such fact was well known to the defendant, M. C. Garber.

"That the manner in which said 'Crews Estate Oil & Gas Producers, Escrow' account, funds, money, Liberty Bonds and/or Treasury Certificates, interest accumulations, proceeds thereof, etc., was administered, handled, converted and dissipated was the chief business conducted and carried on through said bank throughout said period, and the circumstances as to the manner in which the assets of the bank were on divers occasions benefited from the aforesaid conversions was sufficient to cause the defendant to know and did cause him to know that some unusual and extraordinary matters were transpiring in said bank.

"That throughout the entire period from July, 1922, until October, 1930, the Bank Examiner of the State of Okla-

homa on every examination throughout that period, of which there were several each year, seriously criticized and condemned the manner in which the affairs of said Farmers State Bank were being conducted, and throughout the period said M. C. Garber was a director of said bank he had personal knowledge of such criticisms and condemnations.

"That it was the duty of the defendant, as an officer and director of said bank, at any time he discovered or ascertained in any way that said deposit, account, etc., was being or had been mismanaged, converted and dissipated, to have immediately revealed to plaintiff and his beneficiaries and their representatives, and to have revealed to them the impaired condition of the bank, and plaintiff alleges that long prior to October 31, 1925, said defendant had actual and specific knowledge thereof but failed, refused and neglected to inform plaintiffs thereof, but did, on the contrary, conceal same from them."

Plaintiffs further charge that defendant failed to attend a single one of the 17 meetings of the board of directors held while he was such director, or to keep himself informed as to the manner in which the bank's affairs were being conducted, and that the proper and vigilant performance by defendant of his duties as an officer and director in such bank would have resulted in specific knowledge by him of the wrongful acts of misappropriation and embezzlement complained of, and would have prevented the loss sustained by plaintiffs.

1. It must be borne in mind that for the purpose of testing the sufficiency of the petition, the demurrer admits the truth of all facts well pleaded, together with all inferences which may be reasonably drawn therefrom, and the petition is to be liberally construed in favor of the plaintiff. First State Bank v. Armstrong, 150 Okla. 60, 300 P. 763; 11 Okla. Digest, Pleading, § 214; 21 R. C. L. 506, § 70; 49 C. J. 434-443.

2. The petition alleges a breach by the defendant of his statutory, as well as his common-law, duties. Both kinds of liability may be asserted in the same petition. Bowerman v. Hamner, 250 U. S. 504, 39 S. Ct. 549, 63 L. Ed. 1113. The provisions of the statute prescribing the duties of bank directors prescribe only a minimum of duty and do not, in the absence of provision to that effect, relieve them of their common-law duties. 7 Am. Jur. 217, § 298; 9 C. J. S. 232, note 92; Great Western Min. & Mfg. Co. v. Harris' Estate, 111 Fed. 38; Allen v. Luke et al., 163 Fed. 1018; Williams v. Brady, 232 Fed. 740.

What, then, were the duties of the defendant as such director?

(a) It is the common-law duties of bank directors to "act in good faith and with ordinary care and diligence in conducting the affairs of the bank, or with such diligence as ordinarily prudent men would exercise with reference to the conduct of such a moneyed institution." 3 R. C. L. 458. See, also, Morse on Banks and Banking (5th Ed.) vol. 1, p. 269; 7 Am. Jur. 214; 7 C. J. 563, § 169; 9 C. J. S. 231, § 119; Briggs v. Spaulding, 141 U. S. 132, 11 S. Ct. 924, 35 L. Ed. 662. They are liable for such losses which, by the exercise of ordinary care in attending to their duties, they could have prevented.

(b) The statutory duties of directors as defined by sections 4119 and 4139, C. O. S. 1921 (sections 9124 and 9113, O. S. 1931, 6 O. S. A. § 91, 6 O. S. A. § 235), and the penalty for failure to perform such statutory duties, are as follows:

"The affairs and business of any banking association organized under the laws of this state shall be managed or controlled by a board of directors of not less than three nor more than thirteen in number. . . . Any director, officer, or other person who shall participate in any violation of the laws of this state, relative to banks and banking, shall be liable for all damages which the said bank, its stockholders, depositors or creditors shall sustain in consequence of such violation. . . . The board of directors shall hold at least two regular meetings each year, and at such meetings a thorough examination of the books, records, funds and securities held by the bank shall be made and recorded in detail upon its record book, and a certified copy thereof shall be forwarded to the Bank Commissioner and to each stockholder of record

within ten days." Section 4119, C. O. S. 1921.

(Since March 22, 1924, it has been the duty of the board of directors to hold at least six regular meetings each year. Section 2, ch. 59, S. L. 1923-1924, 9124 O. S. 1931.)

"Every banker, officer, employee, director or agent of any bank who shall neglect to perform any duty required by this chapter, or who shall fail to conform to any lawful requirements made by the Bank Commissioner, shall be deemed guilty of a felony, and upon conviction thereof shall be punished by a fine not to exceed one thousand dollars, or by imprisonment in the penitentiary not to exceed five years, or by both such fine and imprisonment." Section 4139, C. O. S. 1921.

These sections were construed by the Circuit Court of Appeals in Eubank v. Bryan County Bank, 216 Fed. 833, in an opinion by Judge Reed, and it was there said:

"A careful reading and consideration of the banking law of Oklahoma convinces beyond any doubt that it was its purpose to *impose upon the principal officers and directors of banks organized under its provisions the positive duty of its management and control; and not that they should act as mere figureheads or dummies upon whom no responsible duty should rest.*" (Italics ours.)

They were also discussed by this court in Bryan County State Bank v. American Nat. Bank, 56 Okla. 529, 156 P. 352, where it was said:

"It is clear that one of the main purposes of the banking laws of the State of Oklahoma is to impose upon the officers of the bank, such as the president or director, the positive duty of its management and control and to fix upon these officers the duty and responsibility of conducting said bank in accordance with law, and *this court should be slow to adopt any construction of law which would relieve these officers from their responsibility.*" (Italics ours.)

(c) We think the petition states facts sufficient to constitute a violation of both these common-law and statutory duties. The statutes are to be construed in connection with the common law on the subject, and are to be liberally construed in favor of those for whose benefit they were enacted,—the stockholders, depositors, and creditors. Section 2, O. S. 1931, 12 O. S. A. § 2.

In Fletcher, Cyclopedia Corporations, § 1090, we find this pertinent language:

"It frequently happens that persons become directors of banking houses for the purpose of capitalizing the position in the community where the bank does business, without any intention of watching or participating in the conduct of its affairs. It is a dangerous practice for the director, since such figureheads and rubber stamps are universally held liable on the ground that they have not discharged their duty nor exercised the required amount of diligence exacted of them. Thus directors who confide their duties to the other directors and take no part in the management of the corporation are liable, ordinarily, for misconduct of the other directors. Similarly, a director is liable for the wrongful acts of a codirector, where the former neglects his duties and trusts to the judgment of codirectors, and, when he learns of such acts, acquiesces therein and takes no steps to protect the rights of the corporation."

See, also, Zollman, Banks and Banking, § 2032; Mitchie on Banks and Banking (Perm. Ed.) p. 211, § 130 c; Bowerman v. Hamner, 250 U. S. 504, 39 S. Ct. 549.

Under the terms of the statutes above quoted, it was Garber's duty, along with the other directors, to manage and control the affairs of the bank. Under the allegations of the petition he violated this duty, and, therefore, participated in a violation of the banking laws. The depositors injured as result of such violation are given a cause of action by section 4119, C. O. S. 1921, supra.

3. But it is contended by Garber that the action cannot be maintained by the owner of the deposit, but only by the bank or its receiver. We do not believe the authorities relied on by Garber support this contention. Here we have to do with an escrow account. The title to the money and securities held in the account remained in the owners of the account—

the plaintiffs here. It did not vest in the bank. The bank was merely the bailee. 7 Am. Jur. pp. 292, 297, 298. It follows that when the money and securities were embezzled, the property of the plaintiffs, not that of the bank, was embezzled. In such a case the action for conversion of the securities should be brought in the name of the plaintiff, the real party in interest, the one entitled to the proceeds of the judgment. See section 142, O. S. 1931, 12 O. S. A. § 221; Johnson v. Harris, 187 Okla. 239, 102 P. 2d 940.

It is said in Mitchie on Banks and Banking (Perm. Ed.) § 165:

"Directors of the bank are personally responsible to the depositors for the loss or conversion of *special deposits* in the bank whenever they knew of such conversion or might have known of it by the exercise of such care and diligence as the law requires of such officers in supervising the affairs of the bank."

The view urged by Garber that bank directors are ordinarily liable only to the bank, and not to its creditors, is adhered to in South Carolina, Kentucky, and Tennessee (Brown v. Hammett, 133 S. C. 446, 131 S. E. 612; Savings Bank v. Caperton, 87 Ky. 306, 8 S. W. 885, 12 Am. St. Rep. 488; Deaderick v. Bank of Commerce, 100 Tenn. 457, 45 S. W. 786), yet it is held in those states that the owner of a *special deposit, escrow account* or *trust fund* lost by reason of the negligence of the directors may maintain an action against the directors for such loss. See Fant v. Brissey, 150 S. C. 15, 147 S. E. 632; Miller v. Howard, 95 Tenn. 407, 32 S. W. 305; United Society of Shakers v. Underwood (Ky.) 9 Bush, 609, 15 Am. Rep. 731.

It is generally held that an action for receipt of deposits in an insolvent bank may be maintained by the depositors against the directors, since the injury is to the depositors and they are the real parties in interest. See 9 C. J. S. 271. This is made so by statute in Oklahoma. Section 4128, C. O. S. 1921, 9188, O. S. 1931, 6 O. S. A. § 233; art. 1, ch. 40, sec. 91, S. L. 1937; Paris v. Beckner, 143 Okla. 238, 289 P. 276. In fact the petition states enough to make Garber liable under said statute. The section makes it a felony for a director to be *"accessory to* or *permit* or *connive* at the receiving or accepting of any such deposit." If, as the petition alleges, Garber knew the bank was insolvent during all the time the deposits were being made to the credit of the escrow account, and did nothing to close the bank, or advise the plaintiffs of the bank's insolvency, he thereby did "permit" or "connive" at, and was an "accessory to," the receiving of the deposits in violation of the statute.

It cannot be doubted that the statutes above quoted were enacted for the benefit of depositors as well as creditors and stockholders of the bank. It is unlawful for a director to violate them. Plaintiffs were injured in a peculiar way in their individual capacity by such alleged violations. It follows that the petition states a cause of action for damages in tort against Garber (Johnson v. Harris, 187 Okla. 239, 102 P. 2d 940) and the demurrer should have been overruled.

What we have said relates to his duties as a director and not as an inactive vice president, which we do not now pass upon.

Reversed, with directions to overrule the demurrer and proceed not inconsistently with the views herein expressed.

WELCH, C. J., CORN, V. C. J., and RILEY, OSBORN, GIBSON, and ARNOLD, JJ., concur. BAYLESS and DAVISON, JJ., concur in conclusion.