CORRELL et al. v. EARLEY et al.

No. 34141.   Nov. 20, 1951.

*237 P. 2d 1017.*

Robert W. Maupin and Morton Perry, Oklahoma City, and Denham A. Maupin, Alexandria, Va., for plaintiffs in error.

Harry James and Edward Earley, Oklahoma City, for defendant in error Edward Earley.

A. L. Beckett, Oklahoma City, for defendants in error Clarence Mayfield, Alberta Mayfield, G. Douglas Waterford, and Hazel Waterford.

Hal D. Leaming and Rollie D. Thedford, Oklahoma City, for defendants in error E. T. Fent, Elizabeth Fent, I. W. Coulter, and Carrie E. Coulter.

GIBSON, J. The parties will be referred to as they appeared in the trial court.

This case was decided on demurrers to an amended petition, as amended, filed by plaintiffs wherein they allege ownership of four lots in block 11 of Oak Park Addition to Oklahoma City, which they occupied as a homestead; that in 1926 they entered into a written contract with certain other property owners in said block wherein it was covenanted that no owner, his heirs, successors or assigns should sell, lease or give away any property in said block to any person of the Negro or African race. The contract further provides that any deed or conveyance made in violation of the agreement "shall be void and may be set aside on the petition of one or more of the parties." Said contract was recorded on May 6, 1926.

It was further alleged that defendants, on or about April 6, 1945, entered into a conspiracy to evade and destroy the effect and restrictive covenants of said contract with the wrongful, malicious and willful purpose of injuring and damaging the value of plaintiffs' properties in block 11; that defendant white owners of certain lots conveyed to defendant Earley, who was without financial responsibility, and that it was agreed that Earley was to encumber the property for as much loan as it would bear and then convey to Negroes, and that Earley did thereafter convey to certain named defendants who were Negroes.

It was further alleged that plaintiffs had been put to the expense of $1,000 attorney fees to enforce the covenants of the contract and that by reason of the willful, malicious and wanton acts of defendants they should be assessed with punitive damages in the sum of $10,000.

The first cause of action named defendants I. W. Coulter and his wife as the grantors to Earley, and defendants G. Douglas Waterford and Hazel, his wife, who were Negroes, as grantees in a deed executed by Earley.

The second cause of action named E. T. Fent and Elizabeth, his wife, as grantors to Earley, and alleged that he conveyed to Clarence and Alberta Mayfield, husband and wife, who were Negroes. The same allegations of conspiracy and the amounts of damages were set up as against the defendants in this second cause of action. It was further prayed that the deeds mentioned be canceled and that judgment for the alleged damages be decreed a lien on the properties sold to the named defendants and that said properties be sold to satisfy the liens. Copies of the restrictive contract and all deeds mentioned were attached as exhibits.

Various motions and demurrers were filed by the several defendants, and plaintiffs assign rulings thereon as error, but in view of our decision we need not consider these assignments.

Plaintiffs filed an amended petition in amplification of the conspiracy charge. Later, plaintiffs filed an amendment to their petition and amended petition. The amendment contains the following allegations:

"That, notwithstanding the contract named in said original petition, and the restrictions, solemn obligations and conditions therein set out; the defendants herein and each of them, entered into a conspiracy, and did conspire together, and with each other, with a total disregard for the rights of these plaintiffs, and all other property owners in the block described in said petition, to destroy the restrictions, terms and conditions of said contract, in the following particulars: That it is well known generally, and is, and was well known by the said defendants, and each of them; that the purchase, rental, or leasing of real property by any person or persons of African *decent,* will always cause the remainder of the property in the same block to decrease in value at least from fifty to seventy-five percent. That the defendant Earley is and was, at all times mentioned herein, a person without financial standing and responsibility, without any respect for the rights of white people residing in said block, that he is a person of no *consiencious* principles, that he is a person who is easily persuaded by other people who have a conniving plan or scheme, or purpose, and was therefore selected by his co-defendants, and each of them, to act, and did act as a tool, hinchman, stool pigeon or cats paw to accomplish the conspiracy herein alleged."

It is further alleged that prior to the acts and conduct of defendants as alleged, plaintiffs' property had a reasonable market value of $16,000, but on account of and due to the acts of defendants and each of them the property now has a value not to exceed $6,000. Plaintiffs pray judgment against defendants on each cause of action in sum of $10,000. Thus it would appear that in their amendments plaintiffs abandoned their claim of punitive damages set forth in their original petition, and all damages sought are for actual damages resulting from the alleged conspiracy.

During the pendency of this action, and on May 3, 1948, the Supreme Court of the United States handed down its decision in Shelley v. Kraemer and McGhee v. Sipes, 334 U. S. 1, 68 S. Ct. 836, 92 L. Ed. 1161; and Hurd v. Hodge, 334 U. S. 24, 68 S. Ct. 847, 92 L. Ed. 1187, wherein it was held that contracts containing restrictive covenants which have for their purpose the exclusion of persons of designated race or color from the ownership or occupancy of real property offend the equal protection clause of the Fourteenth Amendment to the Constitution of the United States.

The circumstances presented in the case at bar do not differ materially from the above mentioned cases.

In the case at bar, just as in the Shelley case, the restriction of the agreement was directed toward a designated class of persons and it seeks to determine who may or may not own or make use of the properties and the excluded class is defined wholly in terms of race or color.

The Supreme Court of the United States in the above opinions held that such restrictive covenants based on race or color standing alone did not violate the Fourteenth Amendment so long as the purposes of the covenants are effectuated by voluntary adherence thereto, but that it is violative of the equal protection clause of the Amendment for the state courts to enforce the covenants; that the actions of the state courts and their officers in their official capacities are actions by the state within the meaning of the Amendment, and that action by the state courts in granting judicial enforcement of the covenants constituted a denial of equal protection of the laws to the purchasers of property affected by such covenants. It is further held that the Constitution confers on no individual the right to demand action by the state which would result in a denial of equal protection of the laws to other persons.

These cited opinions by the United States Supreme Court are controlling in the instant case in so far as plaintiffs seek to invoke action by the state court to cancel the deeds from Earley to the Negro defendants, and the impression of a lien for damages, on the properties conveyed to said defendants. As to the claim for damages resulting from the acts and conduct of defendants done and performed in carrying out the alleged conspiracy, we are met with an entirely different situation.

The petition with its amendments is not skillfully drawn. In each of the separate causes of action plaintiffs set up the alleged conspiracy to evade the terms and obligations of a valid restrictive contract resulting in the impairment of the value of plaintiffs' property, and plaintiffs seek the cancellation of deeds, damages as alleged, and the impressing of a lien for the damages sustained.

But the trial court sustained general demurrers to the petition, as amended, in its entirety. If the petition in its entirety stated any valid cause of action against the defendants or any group of defendants, it was error to sustain general demurrers and dismiss the action. The action in each cause is based on two causes of action, one for cancellation of deeds and secondly for money damages alleged to have been actually and intentionally caused pursuant to a conspiracy. In sustaining demurrers to the petition in its entirety, thus holding that the plaintiffs did not state a cause of action on either basis, it is apparent that the trial court reached its conclusion on account of the decisions by the Supreme Court in Shelley v. Kraemer, supra, and the other cases above cited. The record reveals that prior to these demurrers the trial court overruled one general demurrer to the petition and reversed his position following the above mentioned decisions.

The rule of these Federal decisions would support the trial court in part, but only in part. Those decisions follow the rule that the state may not discriminate against a defendant on ac-

count of his race. It was there held that if the state, through the court, should forbid conveyance of property to a party because of his race, with the application or use of the power of the state to compel obedience to the decree which would naturally result, that would amount to a discrimination by the state in violation of the Federal Constitution.

But this is no rule against plaintiffs' right to collect damages if plaintiffs have actually been damaged by the violation of a valid contract, violated by defendants as the consummation of a conspiracy to so violate it, with the wilful intent to thereby damage these plaintiffs.

This is a valid contract between the white citizens who made it. That is true under the rule of the Federal decisions above cited. They expressly so say. In Shelley v. Kraemer, supra, it was contended that such a restrictive agreement was invalid but the Supreme Court of the United States denied that contention, holding that the contract was valid, although power was withheld from the state courts to enforce it as against Negro purchasers. The court said:

"Since the decision of this Court in the Civil Rights cases, 109 U.S. 3, 27 L. Ed. 835, 3 S.Ct. 18 (1883), the principle has become firmly embedded in our constitutional law that the action inhibited by the first section of the Fourteenth Amendment is only such action as may fairly be said to be that of the States. That Amendment erects no shield against merely private conduct, however discriminatory or wrongful.

"We conclude, therefore, that the restrictive agreements standing alone cannot be regarded as a violation of any rights guaranteed to petitioners by the Fourteenth Amendment. . . ."

Those of the defendants who are white citizens and were bound by this valid contract conspired together to violate the contract for the intended purpose of doing damage to plaintiffs and their property. The Negro defendants knowingly joined with them in the conspiracy for the same intended purpose. We are compelled to take this as true because it is specifically alleged by the plaintiffs and is admitted by the demurrers.

"In passing upon a demurrer thereto, a petition must be liberally construed in favor of the plaintiff, and all facts well pleaded, together with all inferences which may be reasonably drawn therefrom, must be taken as admitted to be true for the purpose of the demurrer." Crews v. Garber, 188 Okla. 570, 111 P. 2d 1080.

So we have this situation: the plaintiffs have a valid contract in protection of their home and property; the courts may not cancel the deed made to Negroes in violation of the contract because the application of the Federal rule deprives the courts of power to do so, or, in other words, the court must decline to cancel the deeds lest by so doing they conduct the state into an act of discrimination against its Negro citizen.

But no such thought need deter the courts in the matter of mere compensatory damages, or punitive damages, if willful wrongdoing justifies such damages. That is to say, if the court requires a white owner of real estate to pay damages, which he intentionally and purposely caused, in direct violation of a valid written contract, of which he had knowledge and to which he was or became a party, that act or judgment by the court would not constitute any act of discrimination by the state against a Negro citizen. None of the defendants had any legal right to conspire to knowingly injure the value of the property of another citizen.

Under the trial court's judgment in this case the defendant white citizens are in the position of saying or contending that they may, with impunity, conspire together to damage plaintiffs by violating a valid and binding contract, and may carry out such design and cause actual damage as intended, using as a complete shield, or as a justification of their acts, the contended appli-

cation of the rule of the Federal decisions. That rule and those decisions do not and cannot so apply.

If the contract, despite its restrictive covenants, is valid, as held by the United States Supreme Court, and if the defendants conspire to violate it, with knowledge and intention that in so doing they will cause damage to the plaintiffs, and they consummate the scheme and cause the intended damage, all of which is admitted by the demurrers, the defendants would be liable to plaintiffs for damages sustained.

Under the Federal ruling in the cited cases defendant white owners could convey a legal title to the Negro purchasers and the Negro purchasers could legally purchase such properties. But since the restrictive contract was valid the white seller would act at his peril of being required to pay plaintiffs damages for breach of a valid contract between himself and other lot owners. Here it is charged that, in order to evade being required to pay damages for his breach, the original white owner, who might have been financially responsible, entered into a conspiracy to convey to one who was without financial responsibility, the latter to convey to the Negro purchaser. Under the demurrer we must assume this to be true. Thus it was intended to cheat and deprive plaintiff of his right to pursue a solvent seller on his claim of damages for breach of contract. This is one vice of the conspiracy. If the conspiracy was vicious, all parties participating therein are liable for any injury sustained by plaintiffs as a result of the conspiracy. All acts done in carrying out the conspiracy were extraneous to the mere sale of property to Negro purchasers, and extraneous to the performance or nonperformance of the restrictive contract.

This action alleging the conspiracy is grounded in tort. The case of Rich v. New York Central & Hudson River Railroad Co., 87 N. Y. 382, was one involving a scheme to enable defendant to evade and violate a covenant and to escape payment of damages. The New York court said:

"An omission to perform a contract obligation is never a tort unless that omission is also an omission of a legal duty; a mere contract obligation may establish no relation out of which a separate or specific legal duty arises, and yet extraneous circumstances and conditions in connection with it may establish such a relation as to make its performance a legal duty and its omission a wrong to be redressed. This holds true, though the injury suffered was the result of a series of acts, some of which were lawful and innocent."

The trial court erred in sustaining general demurrers to the petition as amended.

The judgment is reversed and the cause is remanded, with directions to proceed in accordance with the views herein expressed.

ARNOLD, C. J., HALLEY, V. C. J., and WELCH, CORN, DAVISON, JOHNSON, and BINGAMAN, JJ., concur. O'NEAL, J., concurs in result.