MASSIE WIRELESS TELEGRAPH CO. v. ENTERPRISE TRANSP. CO.

(Circuit Court of Appeals, First Circuit. January 4, 1910.)

No. 846.

**1. TELEGRAPHS AND TELEPHONES (§ 25½\*)—WIRELESS TELEGRAPH—LEASES— CONSTRUCTION—"LOSS"—"DESTRUCTION"—"DETENTION."**

A lease of a wireless telegraph outfit provided that when once installed it should not be removed to any other vessel or place without the lessor's consent, and gave the lessor the right to resume possession; also gave the lessor, in case of the lessee's abandonment, or any use otherwise than as provided in the contract, special remedies by injunction, etc. The lease also provided for payment by the lessee of the reasonable value of any instrument, or parts, lost or destroyed, not exceeding $1,000 for total loss or destruction, otherwise than by unavoidable accident or detention, and $50 per month in case of the unauthorized removal or detention of any instrument, until their destruction or loss without the lessee's fault was satisfactorily proved. *Held*, that a sale of the vessel on which the wireless apparatus was installed, by a receiver, without special reference to such apparatus, did not constitute a total "loss," "destruction," or "detention" thereof, so as to entitle the lessor to an allowance out of the proceeds of the steamer of the $1,000 and $50 per month under such provision in the lease.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Dec. Dig. § 25½.\*

For other definitions, see Words and Phrases, vol. 5, pp. 4232–4237; vol. 3, p. 2030–2033; vol. 3, p. 2036.]

**2. EQUITY (§ 408\*)—MASTERS—REFERENCE—REPORT OF EVIDENCE.**

The practice with reference to reports of evidence in proceedings in equity by masters stated.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 901, 902; Dec. Dig. § 408.\*]

Appeal from the Circuit Court of the United States for the District of Massachusetts.

Proceedings for the settlement of the affairs of the Enterprise Transportation Company. A sale of the steamer Kennebec having been made by Hollis A. Bailey, receiver, the Massie Wireless Telegraph Company intervened, and claimed a portion of the proceeds of the sale for the alleged loss or destruction of a wireless telegraph outfit installed on said steamer. From a decree denying intervener any relief, it appeals. Affirmed.

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Herbert Almy, for appellant.

Samuel Williston, for appellee.

Before COLT and PUTNAM, Circuit Judges, and ALDRICH, District Judge.

PUTNAM, Circuit Judge. It appears on this appeal that Hollis R. Bailey was appointed by the Circuit Court for the District of Massachusetts receiver of the Enterprise Transportation Company, with authority to wind up the concern, including disposing of its assets and paying its debts. Among the other assets was the steamer Kennebec. She was sold by the receiver pursuant to an order entered in the Circuit Court on November 23, 1907, authorizing him to sell the steamer, "with all her masts, bow-sprits, sails, boats, anchors, cables, tackle, furniture, and all other necessaries thereto appertaining and belonging, free of all liens and incumbrances whatsoever." The order also provided that the receiver should retain the proceeds of the sale, "subject to the same liens and incumbrances, if any, which, prior to the sale, existed against or attached to said steamer and appurtenances, unless otherwise ordered by the court."

The steamer was sold accordingly for a gross sum which came into the hands of the receiver. There had been installed on the steamer by the appellant a wireless telegraph plant under a lease to the Enterprise Transportation Company, which lease provided for the maintenance thereof by the appellant, for which maintenance and use payment was to be made at a rate which gave an amount due to the appellant at the time the receiver was appointed of $255. This amount has been so disposed of that we have no occasion to consider it.

The lease also provided for the following payments by the lessee, namely:

"The reasonable value of any instruments or parts lost or destroyed, not exceeding $1,000 for total loss or destruction otherwise than by unavoidable accident or detention, and $50 per month in case of the unauthorized removal or detention of any instruments until their destruction or loss without the subscriber's fault is satisfactorily proved."

It also concluded with the following:

"But the payment shall not confer any title to the instruments or right to use them."

By the word "subscriber" was meant the Enterprise Transportation Company.

The steamer was sold, as we have said, with the wireless telegraph installation aboard; and, so far as the case shows, the latter was delivered to the purchaser, and has remained in the purchaser's possession. Whether or not used by the purchaser the case does not show. The present appeal relates to a claim made by the appellant against the receiver under the provision for payments of the $1,000 and the $50 per month. The claim was referred to a master, and was disallowed by both him and the Circuit Court.

The proofs in the case lack precision upon one point; that is, whether or not the receiver, in fact, undertook to sell the wireless telegraph installation, or did sell it. It may well be doubted whether the

· order of the court authorized the sale thereof. In other words, it may be well doubted whether a wireless telegraph installation would have come within any of the words we have cited as words indicating the appurtenances of a steamer or sailing vessel. Even with reference to a chronometer, which has been regarded as necessary in navigating vessels for so long a time, whether or not it passes as appurtenant to a ship seems to be a matter of local usage. There is no established usage with regard to wireless telegraph installations; and probably, if we were compelled to pass on the question whether they would be covered by a bill of sale of a vessel and its appurtenances, or a vessel with its furniture, we would be compelled to hold that they would not.

Also, it is no doubt true that if, under an order of the kind to which we have referred, a sale had been authorized and made to include a wireless telegraph installation, the value of that installation would properly be regarded as in the hands of the receiver by authority of the court, to be accounted for by him to whomsoever it might belong.

But the case does not raise any of these questions. The claimant in the Circuit Court, the appellant here, makes no allegation that the receiver has converted the wireless telegraph installation by a sale or otherwise. His claim is put squarely on the proposition that it was within the meaning of the lease, "wholly lost" to the Massie Wireless Telegraph Company. It raises only the proposition that the sale of the steamer to a stranger to the appellant made a case of "loss or destruction" and of "removal and detention" within the meaning of the lease. Apparently the appellant undertook before the master to whom the case was referred, to show that the steamer was sold at Fall River, and so quickly sold that it had no opportunity to remove the telegraph installation before the steamer was delivered to the purchaser; and it is on this that the appellant based the claim for "loss and destruction" which we have explained. In order that there may be no misunderstanding with reference to this we give here the entire claim:

"The Massie Wireless Telegraph Company, a corporation located and doing business in Providence in the state of Rhode Island, respectfully represents:

"That the Enterprise Transportation Company, respondent in the above-entitled case, heretofore, to wit, on the ...... day of ...... 190.., entered into a contract in writing with the petitioner for the installation and maintenance of one complete set of the wireless telegraph receiving and transmitting instruments upon the steamer Kennebec, at that time belonging to said Enterprise Transportation Company. That one of the conditions of said contract is as follows: '(1) The wireless instruments furnished hereunder are the property of the Massie Wireless Telegraph Company, are constructed and used under its patents, and are leased and licensed by authority of said company only for use in the manner herein specifically allowed, and any use otherwise or without the payment herein provided to be made is and will be an injury to and an invasion of the rights of the Massie Wireless Telegraph Company, entitling it to an injunction and other legal rights in a suit or other proceedings to be instituted and prosecuted in the name of said company, entitling it to any and all lawful remedies, thereby entitling it to resume possession of the instruments and collecting all sums due or to become due or otherwise. They are not to be used for performing any service in competition with any service which the company may undertake to perform. The subscriber is to pay the reasonable value of any instruments or parts lost or destroyed, not exceeding $1,000 for total loss or destruction, otherwise than by unavoidable accident or detention, and $50 per month in case of the unauthorized removal or deten-

tion of any instruments until their destruction or loss without the subscriber's fault is satisfactorily proved, but the payment shall not confer any title to the instruments or right to use them.'

"A copy of said agreement will be produced at the hearing.

"That a complete set of the Massie wireless telegraph instruments for receiving and transmitting messages was placed on said steamer Kennebec, pursuant to the terms of said agreement and was on said steamer when she came into the possession of Hollis R. Bailey, the receiver appointed by this honorable court, on, to wit, the 16th day of November, A. D. 1907, in the above-entitled cause. That your petitioner is informed that said receiver has sold said steamer, and, although requested by your petitioner, said receiver has not returned said instruments, and has not paid the sum required by said agreement to be paid for the use thereof, or the sum provided in said agreement in case of the loss or destruction of said instruments, or the sum required to be paid by said agreement in case of the unauthorized removal or detention of any instruments until their destruction or loss without the subscriber's fault is satisfactorily proved.

"And your petitioner shows that the said instruments are detained by the fault of said receiver in not returning them before sale of said steamer Kennebec, or in not notifying your petitioner of the intended sale thereof in time for your petitioner to take possession of said instruments.

"Wherefore your petitioner prays that said receiver be directed to pay to your petitioner the reasonable value of said instruments, together with the sum of $50 per month for such detention of said instruments.

　　　　　　　　　　　　"Massie Wireless Telegraph Co.,
　　　　　　　　　　　　　　"By its Solicitor, Herbert Almy."

"Hollis R. Bailey, Receiver of the Enterprise Transportation Company, to the Massie Wireless Telegraph Company, Dr.

"To one set of wireless telegraph instruments which was on board of the steamer Kennebec under lease, and which is wholly lost to the Massie Wireless Telegraph Company, $1,000.

"And $50 per month for their detention as per condition in contract."

A reading of this makes plain that our view of the proposition made by the appellant in the Circuit Court is correct. It is enough to say, therefore, that it is quite evident that, although it may be doubtful what is meant by "loss or destruction" or by "detention" of the installation, it is plain that what was done by the receiver was not within any interpretation which can be fairly given those words. The installation was neither lost nor destroyed nor detained, but was merely left where apparently the appellant could have taken possession of it, if it so desired, or, if it preferred, could have left it to be used by the purchaser of the steamer at the rate provided for in the lease, or possibly have regarded either the Enterprise Transportation Company as having failed to terminate the lease in a proper way, and, therefore, as continuing liable for the rental thereof.

We will add that some light on the meaning of the word "lost" is derived from the provision of the lease that, in case of the loss of a vessel equipped with the installation in question, the claimant will, at its own cost, furnish for use another installation to be held under the terms of this lease. Upon the present propositions of the appellant it would escape furnishing a new installation, yet be entitled to the $1,000 now claimed by it without any consideration therefor. The expression "loss or destruction," and also the expression "unauthorized removal or detention," get some further light from other terms of the lease to the effect that an instrument, when once installed on the vessel, "should not be removed to any other vessel or place without the

consent of" the lessor. The lease contains full special provisions giving the lessor the right to resume possession, and prohibiting the removal of the installation to "any other vessel or place," and also giving, in case of "abandonment," or "any use otherwise than" as provided in the contract, special remedies by injunction, etc.; all of which renders it inconsistent and unnecessary that the words "loss," "destruction," or "detention" should receive any unusual or forced construction. For all of these reasons we find it impossible to hold that the claimant's presentation of its own case shows any "loss," "destruction," or "detention," within the provisions of the lease on which it relies.

The principal burden of the discussion before us related to the fact that the Circuit Court had refused to direct the master to whom the claim was referred to report certain evidence with regard to the appellant's exceptions, although no request to report it had been made to him. The practice with reference to this topic in the federal courts is clearly pointed out in Greene v. Bishop, 1 Cliff. 186, 195, Fed. Cas. No. 5,763, and in Bates' Federal Procedure in Equity, vol. 2, §§ 771–777. According to the settled practice, it would not have been proper for the master to report the entire evidence before him, as there was no order from the court to that effect, nor to report even such portions of the evidence as related to the exceptions, without a request from the party excepting. Of course, it was within the power of the Circuit Court to relieve any party excepting from so strict a rule as this; a power which is ordinarily expressed to be within the discretion of the court of first instance, but which, nevertheless, it would be within the authority of the appellate tribunal to revise, in case that tribunal found that justice required that the two courts should have the evidence referred to, for the purpose of properly disposing of the suit as it came before them. The extent to which authority of this kind is used by appellate courts is illustrated in some cases which go far beyond what would be required here. Goodman v. Niblack, 102 U. S. 556, 563, 26 L. Ed. 229; Wiggins Ferry Company v. Ohio & Mississippi Railway, 142 U. S. 396, 413, 416, 12 Sup. Ct. 188, 35 L. Ed. 1055; and The Helen Story, 71 Fed. 431, 17 C. C. A. 669. It is not, however, necessary for us to dwell on this topic, because the exceptions to which this discussion relates were as to purely incidental matters, wholly unimportant in view of the fact that we are able to dispose of the case on the face of the claimant's petition. The truth is that the propositions on which we rest our conclusions go so deep that these incidental matters are wholly immaterial.

The decree of the Circuit Court is affirmed, and the appellee recovers his costs of appeal.