BOWERMAN *v.* HAMNER, AS RECEIVER OF THE FIRST NATIONAL BANK OF SALMON.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

No. 289. Argued April 28, 29, 1919.—Decided June 9, 1919.

In addition to the specific duties defined in the National Banking Law, a director of a national bank is under a common-law obligation, to depositors and shareholders as well as to borrowers, to exercise at least ordinary care and prudence in the supervision and administration of the bank's affairs. P. 510.

While knowledge may be essential to render a director liable as for a breach of a duty specially imposed by the statute, this does not prevent application of the common-law rule in measuring violations of common-law duties. P. 511.

Both kinds of liability may be asserted in one bill of complaint. *Id.*

A director of a national bank who wilfully fails to attend the meetings

of the board of directors and otherwise to inform himself of the condition of the bank and to supervise its affairs is guilty of a breach of his common-law obligation, and liable for losses resulting from gross mismanagement by the executive officers which a proper attention to his duties might have avoided. P. 513.

The fact that the director resides at a distance from the location of the bank does not excuse him from this responsibility. P. 514.

Where a director of a national bank, charged in the same bill with both statutory and common-law liability, secured a dismissal of the bill on the plaintiff's proofs without introducing any evidence of his own, and the Circuit Court of Appeals reversed the case and directed a decree against him on the ground that the common-law liability was established, *held*, that the defendant was not entitled to a new trial of that issue upon the ground that the case in the District Court had been treated as involving only the statutory liability. *Id.*

Under Rev. Stats., § 5145, a director of a national bank remains responsible as such in the absence of evidence that he has resigned or refused to qualify when reëlected. *Id.*

241 Fed. Rep. 737, affirmed.

THE case is stated in the opinion.

*Mr. Oliver O. Haga,* with whom *Mr. James H. Richards, Mr. McKeen F. Morrow* and *Mr. J. L. Eberle* were on the brief, for appellant.

*Mr. J. M. Stevens,* with whom *Mr. Milton C. Elliott, Mr. Jesse R. S. Budge* and *Mr. H. E. Ray* were on the brief, for appellee.

MR. JUSTICE CLARKE delivered the opinion of the court.

This is a suit, commenced in the United States District Court for the District of Idaho, Eastern Division, by the Receiver of the First National Bank of Salmon, against the former executive officers and directors of the bank to obtain an accounting and decree for money lost by the alleged unlawful and negligent management of the affairs of the bank.

The sole appellant, Bowerman, was a director, but not an executive officer, of the bank from its organization in January, 1906, until its failure in August, 1911, and, as owner of $10,000 of the capital stock, he was the largest stockholder but one.

The bank was located in a small town in Idaho. It had a capital stock of only $25,000, which was increased, in February, 1910, to $50,000, and it had a book surplus of $15,000,—$5,000 of which was improperly carried to the surplus account in July, 1910, when the capital was certainly impaired.

When the plaintiff rested, the appellant moved that the bill be dismissed as to him, announcing that he would not introduce any evidence in his own behalf, and at the conclusion of the trial the District Court granted his motion. On appeal the Circuit Court of Appeals reversed this judgment, found Bowerman liable, and in the decree, which we are reviewing, remanded the case to the District Court with direction to enter a decree in conformity with the views expressed in its opinion.

The amended bill, on which the case was tried, is framed in fact, though not in form, in the alternative, averring, first, that the executive officers made and that the directors knowingly permitted them to make, three designated loans, each in excess of one-tenth part of the paid in and unimpaired capital stock and surplus of the bank, in violation of § 5200 of the Revised Statutes of the United States. It then proceeds to allege: that, beginning with January, 1910, the affairs of the bank were grossly mismanaged by the executive officers, with the negligent permission of appellant and other directors; that of the three designated loans, on which large losses were sustained, the first was made to "the Salmon Lumber Company, a corporation without financial resources to justify such a loan without security, and with its capital stock owned principally by members of the family of the president of the

bank; that the two other designated loans were negligently made to persons without financial standing and without security sufficient to justify the making of them; that overdrafts aggregating large amounts were permitted to be made by many persons, in violation of the by-laws of the association, and that a dividend on the capital stock was declared and paid in July, 1910, when the capital stock and surplus of the bank had been much impaired and its assets greatly depreciated. This gross mismanagement, it is averred, caused the failure of the bank and the loss for which recovery is prayed.

With respect to appellant Bowerman, it is specifically alleged that in disregard of his oath as a director to diligently and honestly administer the affairs of the bank, he negligently and wilfully failed: to attend a single meeting of the board of directors, to at any time examine, or cause to be examined, the books and papers of the bank to ascertain its condition, or to in any manner inform himself as to the loans and overdrafts that were being made during the long period of mismanagement by the executive officers. It is alleged that the exercise by him as a director of a proper supervision of the affairs of the bank would have prevented the mismanagement complained of and the loss which resulted from it.

Appellant's answer to the bill is substantially a general denial.

The evidence applicable to the allegations against Bowerman may be summarized as follows:

He was a director during the entire five and one-half years of the existence of the bank, but never attended a single directors' meeting, regular or special. The only justification or excuse he offers for such conduct is that he lived about 200 miles from the town in which the bank was located and that communication between the two places was difficult.

In a letter, which is in evidence, written by him to the

president of the bank in 1911, after the failure, he refers to himself as "a nominal director," and says that prompted by a published statement of the bank, which he had seen in 1910, he began writing to the president, warning him of the consequences if the "very hazardous manner of conducting the bank" was not changed, "various matters corrected and improved and more of the notes collected, and the reserve kept up." In this letter he says that he had never been "consulted, either as to the management of the bank, its business transactions or its policy," and that he had never received a statement of its condition, either the usual published statement or one for his personal use, without making request for it, and that in some cases he had been obliged to write several times before one was sent to him. The record, however, does not show that any communication of the kind described in this letter was ever written by him prior to the failure.

The only certified copies in evidence of the oath taken by Bowerman as a director are for the years beginning in January, 1909, and in January, 1910. They are in the form prescribed by statute, that the affiant will "diligently and honestly administer the affairs of said association, and will not knowingly violate, or willingly permit to be violated, any of the provisions" of the statutes of the United States under which the association was organized.

The by-laws of the bank are in evidence and they require "that regular meetings of the directors shall be held on the first Tuesday of each month;" that a "loans committee," to be composed of the president, cashier and one director, shall make a report to each meeting of the board of directors of all bills, notes, and other evidences of debt discounted and purchased since its last previous report; that no officer or clerk shall pay any check drawn upon the bank unless the drawer at the time of its presentation had sufficient funds on deposit to meet it; that a committee of three directors shall examine the affairs of the bank

every month to see whether it is in sound and solvent condition and to recommend changes which may seem desirable in the manner of doing business.

In addition to these, there was a special by-law adopted on January 18, 1910, upon the suggestion of the Comptroller of the Treasury, requiring that "the Board of Directors of the bank shall, at each monthly meeting, or oftener, examine and approve all loans and discounts, and such approval shall be recorded in a book kept for that purpose."

Some of these by-laws were flagrantly disobeyed for years before the failure, and the others were observed in a manner so perfunctory as to amount to a disobedience of them. The three large loans complained of were never reported to the board of directors, except fragmentarily from time to time when indistinguishably incorporated with other overdrafts, although they were gradually accruing during many months.

When the bank failed its liabilities were $273,719.14 and its assets, nominally $325,624.12, from which, assuming that the stockholders' liability was not included in them, (as to which the record is not clear), there was realized about $220,000, thus showing a shrinkage of approximately $100,000 in the resources of a bank with a capital and surplus of $60,000.

The District Court, with the full record before it, found the aggregate of the three excessive loans at the time the bank failed to be $35,700. Each of these loans was made up by allowing unsecured overdrafts to accumulate over a considerable period of time and then permitting them to be converted into unsecured notes.

Without going more into the details, there can be no doubt that the business of the bank was surrendered wholly to the president and cashier, and was grossly mismanaged after January, 1910, in utter disregard of the national banking laws and of the by-laws of the association, and that this mismanagement was of such a charac-

ter that even slight care in the discharge of his duties as a director must have led Bowerman, an experienced banker, to discover the trend of the management and to have prevented the greater part, if not all, of the losses which resulted in the failure.

The appellant relies chiefly upon the assignment of error that there is no evidence in the record to show that he knowingly consented to the making of the three loans in excess of the limit imposed by Rev. Stats., § 5200, and therefore, he argues that under the rule prescribed in *Yates* v. *Jones National Bank*, 206 U. S. 158, and *Jones National Bank* v. *Yates*, 240 U. S. 541, the decree of the Circuit Court of Appeals holding him liable is erroneous and should be reversed.

While the cited cases hold that, in a suit for damages against national bank directors, based solely upon a violation of duty imposed by the national bank act, it is not enough to show a negligent violation of the act, but that something more, in effect an intentional violation, must be shown to justify a recovery, and that this is the exclusive rule for measuring the responsibility of directors as to such violations, yet, it is expressly pointed out in the opinion of the court, that the act does not relieve such directors from the common-law duty to be honest and diligent, as is shown by the oath which they are required to take to "diligently and honestly administer the affairs of such association" as well as not to "knowingly violate, or willingly permit to be violated, any of the provisions of this Title,"—the National Bank Act.

The rule thus announced would perhaps be applicable if the bill were limited to the charge of liability based solely upon the statutory prohibition of excessive loans, for it is reasonably clear that Bowerman did not have actual knowledge of the making of the loans or of anything else connected with the conduct of the bank. He deliberately avoided acquiring knowledge of its affairs and

wholly abdicated the duty of supervision and control which rested upon him as a director.

The National Bank Act imposes various specific duties on directors other than those imposed by the common law and it is obviously possible that a director may neglect one or more of the former and not any of the latter, or *vice versa.* For example, in this case we have the gross negligence of the appellant, in failing to discharge his common-law duty to diligently administer the affairs of the bank, made the basis for the contention that he did not "knowingly" violate his statutory duty by permitting the excessive loans to be made. While the statute furnishes the exclusive rule for determining whether its provisions have been violated or not, this does not prevent the application of the common-law rule for measuring violations of common-law duties. And there is no sound reason why a bill may be not so framed that, if the evidence fails to establish statutory negligence but establishes common-law negligence, a decree may be entered accordingly, and thus the necessity for a resort to a second suit avoided.

The bill in this case is given, as we have seen, this broader scope, and contains the charge of statutory as well as common-law negligence on appellant's part, resulting in the loss complained of. Such pleading was accepted as proper practice in *Briggs* v. *Spaulding,* 141 U. S. 132, 142, 165, in which a bill thus "framed upon the theory of a breach by the defendants as directors 'of their common-law duties as trustees of a financial corporation and of breaches of special restrictions and obligations of the national banking act,'" was under consideration by this court, and, upon a full review of the decisions, the rule for determining the common-law liability of directors of such banks was twice stated, once on p. 152:

"In any view the degree of care to which these defendants were bound is that which ordinarily prudent and

diligent men would exercise under similar circumstances, and in determining that the restrictions of the statute and the usages of business should be taken into account. What may be negligence in one case may not be want of ordinary care in another, and the question of negligence is, therefore, ultimately a question of fact, to be determined under all the circumstances."

And again, in the final summing up, on p. 165:

"Without reviewing the various decisions on the subject, we hold that the directors must exercise ordinary care and prudence in the administration of the affairs of a bank, and that this includes something more than officiating as figure-heads. They are entitled under the law to commit the banking business, as defined, to their duly-authorized officers, but this does not absolve them from the duty of reasonable supervision, nor ought they to be permitted to be shielded from liability because of want of knowledge of wrong-doing, if that ignorance is the result of gross inattention."

In an earlier case, *Martin* v. *Webb*, 110 U. S. 7, 15, it was said:

"Directors cannot, in justice to those who deal with the bank, shut their eyes to what is going on around them. It is their duty to use ordinary diligence in ascertaining the condition of its business, and to exercise reasonable control and supervision of its officers. They have something more to do than, from time to time, to elect the officers of the bank, and to make declarations of dividends. That which they ought, by proper diligence, to have known as to the general course of business in the bank, they may be presumed to have known in any contest between the corporation and those who are justified by the circumstances in dealing with its officers upon the basis of that course of business."

This latter statement of the rule is made in a case dealing only with borrowers from the bank, but there is no

good reason why it should not be applied for the protection of depositors and stockholders.

While the rule as thus formulated in *Briggs* v. *Spaulding, supra,* has been thought by some state courts of last resort to be an under-statement of the law of the duty of bank directors, it is amply broad, without re-statement, for the disposition of the case before us.

That ordinarily prudent and diligent men, accepting election to membership in a bank directorate, would not wilfully absent themselves from directors' meetings for years together as Bowerman did cannot be doubted; that a director who never makes, or causes to be made, any examination whatever of the books or papers of the bank to determine its condition and the way in which it is being conducted, does not exercise ordinary care and prudence in the management of the affairs of the bank is equally clear, and that Bowerman, when guilty of neglect in both of these respects, did not exercise the diligence which prudent men would usually exercise in ascertaining the condition of the business of the bank or a reasonable control and supervision over its affairs and officers is likewise beyond discussion. He cannot be shielded from liability because of want of knowledge of wrong-doing on his part, since that ignorance was the result of gross inattention in the discharge of his voluntarily assumed and sworn duty.

Bowerman was a banker, and the letter, from which we have quoted, written to the president of the bank which failed, shows he so understood the business of banking and what was necessary for the safe conduct of it that even slight care on his part in the discharge of his duty as a director must have discovered and arrested what he himself characterized as a hazardous manner of conducting its affairs. He was a man of such importance and reputation that the use of his name must have contributed to securing the confidence of the community and of

depositors for the bank, and it would be a reproach to the law to permit his residence at a distance from the location of the bank, a condition which existed from the time he first assumed the office of director, to serve as an excuse for his utter abdication of his common-law responsibility for the conduct of its affairs and for the flagrant violation of his oath of office when it resulted in loss to others.

It is argued that the decree of the Circuit Court of Appeals should be reversed and the cause remanded for a new trial for the reason that the trial in the District Court was on the theory that only the charge of statutory liability was involved and to be met by the appellant, and that he should have an opportunity to produce evidence, if he desires, on the issue of common-law liability.

At his peril the appellant put the construction on the pleadings which, for the reasons stated in this opinion, was erroneous. The suit was in equity and he was charged with notice that the decision of the trial court was subject to review on both the law and the facts and, although he was present in court during the trial, he neither took the stand to testify in his own behalf nor offered any evidence upon the question of his liability. The interests represented by the receiver are entitled to consideration as well as those of the appellant and the contention cannot be allowed.

It is also urged that the appellant resigned his office as director some time before the bank failed and that the decree of the Circuit Court of Appeals renders him liable for transactions after his resignation.

The only showing on this subject in the record is the averment in appellant's answer that he was not a director of the bank after about the first day of July, 1910, and that he refused to qualify when notified of his re-election in January, 1911. These allegations must be deemed denied under the 31st Equity Rule. The only evidence in

the record on the subject is the oath of office taken by appellant in January, 1910, and the testimony of the receiver that the letter from the appellant to the president of the bank, from which we have quoted, was the cnly letter from him which he found, among the papers which came into his possession as receiver, bearing on the mismanagement of the bank,—and that letter was written after the failure. Section 5145 of the Revised Statutes provides that directors shall hold office for one year and until their successors are elected and have qualified. In the absence of evidence that the appellant resigned or refused to qualify when re-elected in January, 1911, we must agree with the Circuit Court of Appeals in the conclusion reached, with the full record before it, that he continued to be a director "from the organization of the bank until the receiver took charge."

Other claims of error, chiefly technical, have been pressed upon our attention, and have all been considered and found to be without substantial merit. Conduct such as this appellant was so palpably guilty of is not to be weighed in the scales of an apothecary. The decree of the Circuit Court of Appeals must be

*Affirmed.*

MR. JUSTICE MCKENNA and MR. JUSTICE MCREYNOLDS dissent.