### RINGEON v. ALBINSON et al.

District Court, D. Minnesota, Second Division. September 11, 1929.

E. H. Nicholas, of Jackson, Minn., and James G. Mott, of Worthington, Minn., for plaintiff.

A. R. English, of Tracy, Minn., and J. H. Hall, of Marshall, Minn., for defendants.

CANT, District Judge. This is an action to enforce the liability of directors of a defunct national bank, and to collect damages from them on account of losses sustained by such bank. The defendants are sought to be charged both under the statute and under the common law.

Where the gist of the action is a violation of the duty imposed by the National Bank Act (12 USCA § 1 et seq.), to justify a recovery, it must in effect be shown that there has been an intentional violation of the provisions of the act. Bowerman v. Hamner, 250 U. S. 504, 510, 39 S. Ct. 549, 63 L. Ed. 1113. Beyond this, however, the director is still under the common-law obligation to be honest and diligent in administering the affairs of the bank, and this his oath of office specifically requires. Bowerman v. Hamner, 250 U. S. 504, 510, 39 S. Ct. 549, 63 L. Ed. 1113; Yates v. Jones National Bank, 206 U.

S. 158, 178, 27 S. Ct. 638, 51 L. Ed. 1002. As to the terms of the oath, see U. S. Code, title 12, § 73 (12 USCA § 73). Charges involving statutory liability and liability under the common-law rules may be united in one bill. Bowerman v. Hamner, 250 U. S. 504, 511, 39 S. Ct. 549, 63 L. Ed. 1113.

"In any view the degree of care to which these defendants [certain bank directors] were bound is that which ordinarily prudent and diligent men would exercise under similar circumstances, and in determining that the restrictions of the statute and the usages of business should be taken into account. What may be negligence in one case may not be want of ordinary care in another, and the question of negligence is therefore ultimately a question of fact, to be determined under all the circumstances." Briggs v. Spaulding, 141 U. S. 132, 152, 11 S. Ct. 924, 931, 35 L. Ed. 662; Bowerman v. Hamner, 250 U. S. 504, 511, 39 S. Ct. 549, 63 L. Ed. 1113.

After the fact, it is sometimes comparatively easy to criticize the act of bank directors when it might have been very difficult to have taken their places and have done much better. This is true mainly, however, with reference to the later periods, when troubles have been long continued. Usually proper action, if taken in time, would have obviated the difficulties.

In this case complaint is made that there has been a violation of both statutory and common-law liability. A loan may not be excessive within the terms of the statute, and yet involve a reckless disregard of duty on the part of the officers and directors of the bank. Quite apart from the matter of excessive loans, under the terms of the statute, it is not difficult to see that in the management of this bank there have been serious violations of the common-law duties resting upon the defendants. A bank is an important institution in any community, and the management thereof may bring disaster to many innocent people around about. The interests of stockholders and of depositors directly, and of many others indirectly, are closely bound up with, and dependent upon, its management. It will not run itself.

In the first instance, the regularly constituted and paid officers, in the main, manage its affairs from day to day. But there must be wholesome and reasonably diligent supervision on the part of the directors. Common experience tells us that the officers themselves often err in judgment. More than this, common experience tells us that, all too often, the selfish interests of the officers prompt them to do many things which they ought

not to do, all at the expense of the bank and to its great loss. All such considerations imperatively demand that, in the exercise of reasonable and ordinary care, there be proper supervision. As bearing upon the precautions which should be taken in this particular case, there were special circumstances of much importance.

For a considerable time before the suspension of the bank here in question, many other banks throughout the Northwest had been obliged to close their doors. There had been something of an orgy of bank failures. The officers in charge of this bank, unless it was the cashier, were not bankers at all. Williams, the president, was a physician; Godfrey, the vice president, had no experience whatever in banking until he was employed in a subordinate capacity in this bank in 1920. None of the men clothed with authority as officers were men of large means. With them, no matter how honest they may have been, the management of a bank was something of an adventure, rather than a sound business proposition. More than this, the bank examiners had warned the directors again and again that conditions at the bank were not at all right, and that remedial action was urgently necessary. All these circumstances and conditions called for greatly increased vigilance on the part of the directors. To how great an extent they failed is plain to be seen.

As we look over the field, we find a strikingly limited number of banks in the midst of the same general surroundings as those of the bank in question, where there was careful supervision, and where prompt action was taken, with the result that there was no serious trouble, and where the financial interests of the community remained unharmed. In other cases where, as here, a policy amounting to very serious mismanagement and neglect, or worse, on the part of some of those responsible, was followed, crash after crash came, as might well have been anticipated. Indeed, no other result could well follow. They reaped as they had sown.

Here, in the main, and especially during the earlier years, the work of the directors did not involve an actual intent to defraud the bank. As time went on, those directors vainly hoped, speaking generally, that things would work out right. Of course, such hope was not well founded. Banking business cannot be carried on as it was here, and work out right. It is bound, under such circumstances, to work out wrong. As men of ordinary sense, they should all have known this. For a considerable time before the bank closed, they did know it. Still the wrongs continued. Additional credit was extended, when it was highly imprudent so to do. These loans were approved by the board of directors. Loans were renewed, when payment in part or additional security should have been required. Paper secretly carried in other banks came back and was paid. Considerable of this was the individual notes of officers of the bank.

In these matters, the bank in effect was being looted. As to some of this, the officers of the bank, or some of them, were alone at fault; but much of it became possible because of the neglect of the directors in connection with the performance of the duties resting upon them. Long before the bank closed, they knew or should have known that it was in desperate straits. It was no wonder that, when the bank suspended, it was found that large amounts of worthless paper had accumulated therein. Much loss to the bank and its stockholders and its depositors has resulted therefrom. In the course of the disaster, some of the directors themselves have suffered most seriously.

Manifestly, the directors who were active officers of the bank were most at fault. As between the other directors, aside from Mr. Tolverson, very little distinction can be made. Mr. Tolverson did not qualify as a director until March 31, 1924. Mr. Fallgatter resided at a distance from the bank, and was not active in his participation in its affairs. This, however, does not relieve him. It was his duty to participate. Bowerman v. Hamner, 250 U. S. 504, 512, 513, 39 S. Ct. 549, 63 L. Ed. 1113. For a certain period, however, during which the wrongs in question were in progress, Fallgatter was not a director, and this circumstance must be taken into account.

As nearly as possible, it must now be determined what part of this loss which has been sustained by the bank is fairly traceable to the failure on the part of the defendants to exercise the proper degree of care in the management and supervision of the affairs of the bank, and then the measure of responsibility as to each defendant must likewise be determined.

In the determination of this case, two underlying principles are being kept in mind:

(1) That, where the rights of others are involved, men must be held to their obligations and to the performance of their duties with a reasonable degree of firmness. This principle has already been invoked and applied.

(2) That, having determined that liabil-

ity exists, there should be no strained construction or undue zeal to enlarge the amount for which any particular defendant should be held, when such amount is a matter of doubt. The amount should be established by a fair preponderance of the evidence, and the findings should not be for the highest possible sum. Here the amounts determined upon are believed to be well within what might be found to be due from each defendant.

The liability of the defendants here might be determined under the provisions of U. S. Code, title 12, §§ 84 and 93 (12 USCA §§ 84, 93), relating to excessive loans. Under the circumstances of this case, there are many difficulties in the way of a just apportionment of the burdens under those provisions. The common-law liability is somewhat more conclusive, and affords a more satisfactory method of making the necessary adjustments, and of placing the burdens where they should rest. Measuring the liability of defendants by the rules of the common law, the evidence here may or may not cover the entire field. It is limited to dealings with individuals as to whom it is charged that excessive loans were involved. Mismanagement may have extended to many other transactions.

We are limited by the evidence, and, as to each defendant, the findings, as nearly as possible, are in accordance therewith.