**BOURNE v. PERKINS et al.**

No. 8738.

Circuit Court of Appeals, Eighth Circuit.

June 9, 1930.

Charles D. Meloy, of Cherokee, Iowa (Charles J. Maher and Molyneux, Maher & Meloy, all of Cherokee, Iowa, on the brief), for appellant.

Edward J. Kelly, of Des Moines, Iowa (Malcolm Currie, of Sac City, Iowa, and Kelly, Shuttleworth & McManus, of Des Moines, Iowa, on the brief), for appellees.

Before STONE and VAN VALKEN-BURGH, Circuit Judges, and OTIS, District Judge.

OTIS, District Judge.

The appellant, hereinafter referred to as the plaintiff, is the receiver of the First National Bank of Sac City, Iowa, which was closed as a going concern November 3, 1925. In his official capacity he instituted this suit in equity against appellees, hereinafter referred to as defendants, who were directors of the bank, by filing in the District Court on April 26, 1927, a bill in fifteen counts. In each of the first fourteen counts judgment for damages alleged to have been sustained by depositors and creditors was asked against defendants under section 5239, Rev. St. section 93, 12 USCA, which provides that—

"If the directors of any national banking association shall knowingly violate, or know- ingly permit any of the officers, agents, or servants of the association to violate any of the provisions of this chapter, all the rights, privileges, and franchises of the association shall be thereby forfeited. * * * And in cases of such violation, every director who participated in or assented to the same shall be held liable in his personal and individual capacity for all damages which the association, its shareholders, or any other person, shall have sustained in consequence of such violation."

In each of these counts it was alleged that the defendants, notwithstanding section 5239, did knowingly violate and knowingly permit the officers of the bank to violate section 5200, Rev. St., section 84, 12 USCA (one of the provisions of law referred to in section 5239) which prohibits loans to any one association, person, company, corporation, or firm beyond 10 per cent. of the unimpaired capital stock and surplus of a national bank. In the fifteenth count of the bill, as the ground for judgment asked in that count against defendants, it was alleged that the defendants negligently administered the bank's affairs and negligently permitted its officers to commit various irregularities to the damage of creditors and depositors.

After answers had been filed, the District Court made an order of reference to a special master as follows:

"And now on this 11th day of May, 1928, this matter comes on for hearing, Molyneux, Maher & Meloy of Cherokee, Iowa, appearing as counsel for plaintiff and Miller, Kelly, Shuttleworth & McManus of Des Moines, Iowa, appearing as counsel for defendants and the Court being advised in the premises finds that the cause falls within the purview of Equity Rule 59, and is a proper case for reference.

"It is therefore ordered that this cause and the issues of law and fact herein be referred to Honorable Edward M. McCall of Fort Dodge, Iowa, counselor at law, as special master.

"It is further ordered that all proceedings be had before the master, to hear and report with findings of fact and conclusions of law in accordance with the rules of practice in equity applicable thereto for the advisement of the court.

"It is further ordered that the master herein appointed shall have full authority pursuant to equity rule and practice applicable thereto to hold hearings at such times and places as he shall deem advisable."

Testimony was heard by the master over a period of fourteen days. He then made, and on November 24, 1928, filed, his report, including findings of law, findings of fact, and his conclusions. Judgment was recommended in favor of these defendants. To the report of the master exceptions were filed December 13, 1928. On February 5, 1929, the exceptions were argued and an order of submission made.

A transcript of the testimony was not sent up by the master with his report. The order of reference did not require that and none of the parties at any time before the order of submission moved for a full report of the testimony taken. The exceptions to the master's report were predicated on matters appearing in the report itself. But, after the order of submission, on February 21, 1929, plaintiff filed a motion to vacate the order of submission, setting up:

"That heretofore hearing was had in the above entitled case before a special master appointed by this court and that plaintiff filed exceptions to the report of such special master and thereafter on February 5, 1929, the exceptions to the report of the special master were submitted on oral argument before this court.

"That at that time the Comptroller of the Currency had not authorized plaintiff to secure a transcript of the record before the special master and an order was entered on February 5, submitting the cause on the plaintiff's exceptions to the special master's report and the exhibits on file in the office of the clerk of the court.

"That since the last named date the Comptroller of the Currency has authorized plaintiff to secure a transcript of the record providing this court grants an order vacating the submission heretofore had and entering an order for resubmission on the whole record made in said cause.

"Plaintiff further respectfully shows to the court that involved in this case are * * * questions of fact which are not thoroughly clear from the master's report. * * * Plaintiff and his counsel are of the opinion and judgment that it would be for the best interest of the trust, and that justice would more properly be done providing the submission heretofore referred to was vacated and set aside, and an order for resubmission was made on the completion and filing of the complete transcript of record."

On February 24, 1929, the plaintiff filed an amendment to this motion, adding thereto the following:

"Plaintiff respectfully shows to the court that at the time the exceptions to the master's report were prepared plaintiff's counsel did not have the benefit of the transcript of the record in the preparation of the exceptions to such special master's report.

"That as an amendment to such motion plaintiff desires in the event that the motion to vacate the order of submission is granted, that the plaintiff shall have the right to amend his exceptions to the report of the special master in such particulars as he may be advised."

Plaintiff's motion to vacate the order of submission was overruled April 4, 1929. On April 30, 1929, the district court overruled the exceptions to the master's report, so far as they concerned matters affecting the liability of the defendants, confirmed the report, so far as it affected the defendants, and as to them ordered and adjudged dismissal of plaintiff's bill.

The assignment of errors presents three principal questions: (1) Did the District Court err in overruling plaintiff's motion to vacate the order of submission? (2) Did the District Court err in confirming so much of the master's report as held defendants were not liable under section 5239? (3) Did the District Court err in confirming so much of the master's report as held defendants not liable for negligence in the management of the bank?

1. It is unnecessary to consider that part of the motion to vacate the order of submission wherein leave to file additional exceptions was asked, since that was asked only in the event the order of submission was vacated. The question is reduced to this, Should the order of submission have been vacated on the ground that the plaintiff would, if it were vacated, file a transcript of the testimony for the purpose of clearing up "questions of fact in the record which are not thoroughly clear from the master's report?"

What plaintiff asked by this motion was either his absolute legal right or it was within the discretion of the court to deny it. If it was within the discretion of the court to deny the motion, there is nothing here to indicate that that discretion was abused. When the order of reference was made, plaintiff knew it contained no direction that a transcript be returned with the report of the master, but he neither objected nor excepted to the omission. At no time after the order of reference did the plaintiff move for an amendment of the order in this regard. Nor did he call for a transcript of the evidence when he filed

his exceptions to the report. On the contrary, it appears both from the motion and the recitals in the court's decree that the Comptroller of the Currency, acting in a supervisory capacity over the appellant, had declined to authorize the expense necessary to the procurement of a transcript. Without once making a request for a transcript, without once offering to supply one, the plaintiff filed his exceptions to the report, argued them, made no objection, and saved no exception to the order of submission, and for the first time raised the question seventeen days after that order. And the motion then filed suggested the value of a transcript only on the vague and indefinite ground that questions of fact referred to in the master's report were not "thoroughly clear." What those questions were was not stated. What light the full testimony would throw on them was not indicated. It was no abuse of discretion under such circumstances to overrule the motion.

And certainly the District Court was vested with discretion in the premises. A contrary conclusion could be asserted in any event only if the order of reference did require the master to send up all the evidence or if as a matter of law it should have so required. It is not the law that an order of reference must require that all the evidence be sent up. 21 Corpus Juris, 615; Massie Wireless Telegraph Co. v. Enterprise Transportation Co. (1 C. C. A.) 175 F. 6, 10. And the order did not require it. The contention of the plaintiff that the concluding phrase, "for the advisement of the court," in the third paragraph of the order of reference, meant that the evidence was to be reported by the master is an interpretation of that phrase not justified by the context.

In addition to the foregoing considerations, the court below would not have been required to go into the evidence if it had been sent up by the master. There was no exception to the report on the ground that any finding of fact was not supported by the evidence or was contrary to the evidence. Only where such an exception has been made can there be occasion for looking into the evidence taken by a master. Medsker et al. v. Bonebrake, 108 U. S. 66, 71, 2 S. Ct. 351, 27 L. Ed. 654.

We conclude that there was no error in the overruling of the plaintiff's motion to set aside the order of submission.

2. In considering the second and third of the three questions presented here, our inquiry is confined to this: From the facts found by the master, did the conclusion of nonliability as to these defendants follow?

Of the twelve specific findings of fact made by the master, two only, Nos. X and XI, made any reference to these defendants. These findings were:

"X. That the directors of said bank who are defendants in this case, namely, L. B. Rake, L. E. Perkins, H. F. Lange, H. B. Low, L. W. Irwin, A. G. Redman and M. W. Jones, did not knowingly violate the federal statute referred to in paragraph 3 of the plaintiff's bill in equity as section 5200, U. S. Revised Statutes, Compiled Statutes, § 9761 [12 USCA § 84]. And that said directors did not knowingly permit any of the officers, agents or servants of the First National Bank of Sac City to violate the provision of the title of the federal statutes referred to in section 5239 U. S. Revised Statutes, Compiled Statutes, § 9831 [12 USCA § 93]. And that said directors and none of them did participate in or assent to any such violations.

"The director, Mr. Redman, who is the 'Creamery man' at Sac City and has lived there since 1916, owned five shares of stock in the bank, which he acquired in 1922 and was elected a director of the bank on January 19, 1925, about two months before the bank closed. Just before being elected a director, he acquired five more shares of stock, making his total holding ten shares. He never had previously held any office in the bank as director or otherwise and it seems he was not in good health and after being elected director of the bank he left in March for Florida and returned in May, 1925, and then went to Rochester, Minnesota, on account of his health for one month. During the seven months that he was in Sac City he attended nearly all the meetings of the directors and was on the examining committee of the board of directors and as such signed several reports in writing regarding the condition of the bank, which reports in several particulars failed to state the true condition of the Bank. It seems, however, he signed these reports relying on the statements of the cashier and president of the bank and perhaps should have made more of a personal investigation as to the books of the bank before signing such statements and relying on the figures presented by the managing officers, but from his appearance on the witness stand and with his limited knowledge of banking, I do not think any further investigation on his part would have been of any avail. I do not think that he had any knowledge of the irregular transactions that were going on in the bank

prior to the time that they occurred and I do not think he acquiesced or consented to any of them.

"Mr. M. W. Jones, the manager of the canning factory at Sac City, was another director that in January, 1925, received ten shares of stock when the bank was in a staggering condition and after acquiring his stock and being elevated to the board of directors, he says that he found the bank in bad shape; that he had no knowledge of the excessive loans or the advancements of additional money to borrowers whose loans already were excessive prior to the time such advancements were made and consented to Perkins remaining in the office of president of the bank only because of the fact that in his judgment if Perkins resigned or was ousted, it would have such a disastrous effect in the community as to preclude any hope of resuscitating the failing institution.

"The director, Mr. Low, was the Ford automobile dealer at Sac City, and like most of the other directors in this bank, was a busy man with his own affairs and didn't and couldn't give very much attention to the details of the business that was being transacted at the First National Bank of Sac City, but had to leave that to the managing officers. But when it became apparent that the affairs of the bank were heading towards disaster he took an active part in attempting to make collections and settlements and to comply with the orders and directions of the national bank examiner. He participated in arranging the settlement by which the bank acquired the Penniman land and the Kurtz farm but from this record it cannot be said that he knowingly violated the federal banking laws or consented to their violation by the other officers of the bank.

"The director, Mr. Lange, owned ten shares of stock in the bank when it closed and became a director in the bank in January, 1922. He states that he attended the meetings of the board of directors and found that some excess loans had been made and cautioned the officers not to advance any additional money to such borrowers. He states he never had any knowledge of any agreement to exchange notes with outside until the Comptroller wrote to the directors regarding the same. He states that the letter to the board of directors, being Exhibit 28, he never saw before the bank closed and did not know of the overdrafts to the president Perkins until after they had occurred and that he then made complaint to the managing officers about the same.

"The record is entirely silent with regard to the defendants, L. W. Rake and Mrs. Perkins, who were directors in the bank, as to their having any knowledge of the transactions in the bank, or participating in any way in the unlawful and irregular transactions which were taking place.

"XI. And from the whole record it is found that the plaintiff has failed to establish the allegations of the bill in equity charging the defendants (aside from the president and cashier) who were directors in the bank, with a violation of the federal statutes referred to in the bill and has failed to establish any violation of the duty of such directors under the common law in the particulars charged in the bill."

Included in these findings are the ultimate facts, first, that the defendants did not knowingly violate or knowingly permit the officers of the bank to violate provisions of the applicable law, and, second, that they were not guilty of negligence in the management of the bank. These ultimate facts, standing alone, inevitably compel the judgment reached by the District Court. But undoubtedly it was the duty of that court to inquire whether the underlying facts found by the master supported the ultimate facts. Very clearly they did support the finding that the defendants did not knowingly violate or knowingly permit the officers of the bank to violate the law within the meaning of section 5239. Very clearly also, so far as defendants Rake, Irwin, and Mrs. Perkins are concerned, the underlying findings support the ultimate fact found of no negligence. As to other defendants somewhat fuller discussion is required.

Bank directors are bound in the exercise of their duties to use that degree of care which ordinarily prudent and diligent men would exercise under similar circumstances. "This includes something more than officiating as figureheads. They are entitled under the law to commit the banking business * * * to their duly authorized officers, but this does not absolve them from the duty of reasonable supervision, nor ought they to be permitted to be shielded from liability because of want of knowledge of wrongdoing, if that ignorance is the want of gross inattention. * * * Directors cannot, in justice to those who deal with the bank, shut their eyes to what is going on around them. It is their duty to use ordinary diligence in ascertaining the condition of its business and to exercise reasonable control and supervision of its officers. They have something more to do

than from time to time, to elect officers of the bank, and to make declaration of dividends. That which they ought, by proper diligence, to have known as to the general course of business in the bank, they may be presumed to have known in any contest between the corporation and those who are justified by the circumstances in dealing with its officers upon the basis of that course of business." Bowerman v. Hamner, 250 U. S. 504, 511, 39 S. Ct. 549, 552, 63 L. Ed. 1113; Briggs v. Spaulding, 141 U. S. 132, 152, 165, 11 S. Ct. 924, 35 L. Ed. 662; Martin v. Webb, 110 U. S. 7, 15, 3 S. Ct. 428, 28 L. Ed. 49.

Having duties thus defined, the bill in this case charges in the fifteenth count that the defendants breached their duties to the damage of depositors and creditors in these particulars, among others, that they permitted the bank's officers to make excess loans and to allow overdrafts, and that they made reports to the Comptroller of the Currency failing to give the true value of securities held.

If it appears from the findings of fact that these allegations were proved then as to those defendants concerning whom they were proved, they should have been held to have been guilty of some negligence. We consider then the findings as to the several defendants other than Rake, Irwin, and Mrs. Perkins.

The defendant Redman was elected a director January 19, 1925, and served actively and continuously as such until the bank closed on November 3, in the same year, except that he was not active for a period of approximately three months when because of illness he was away from Sac City. He was on the examining committee of the board. He signed reports touching the bank's condition which were untrue, although he did not know that fact. As appears from the findings of facts other than X and XI, at the time he was serving as a director and on the examining committee there were a few outstanding excess loans; other excess loans, but few in number and of small amounts, were being made; and overdrafts by one individual were permitted by the officers of the bank. Extraordinary diligence on the part of Redman might have revealed these facts. But there is nothing in the findings from which we can conclude that the exercise of ordinary care by Redman, and that was the full measure of his duty, would have revealed to him irregularities so as to have made it possible for him or supervising officials to prevent the damage

the irregularities brought about. The real culprits were the bank's officers. Their manipulations were so carried on as to make discovery even by skilled bank examiners difficult. It is not surprising that they escaped discovery by ordinary bank directors.

The defendants Jones, Low, and Lange had even less opportunity than did Redman to discover irregularities.

Our conclusion is that the findings of underlying facts made by the master support, and indeed require, the ultimate facts found by him, and therefore that the District Court did not err in overruling the exceptions to his report and in confirming it, so far as it affected the defendants here.

The judgment below should be, and is, affirmed.