**MECHANICS UNIVERSAL JOINT CO. et al.**
**v. CULHANE et al.**
**No. 5384.**

Circuit Court of Appeals, Seventh Circuit.
Nov. 15, 1935.

Rehearing Denied Dec. 31, 1935.

G. A. Shallberg and S. R. Kenworthy, both of Moline, Ill., for appellant Mechanics Universal Joint Co.

Shelby L. Large, of Rockford, Ill., for appellant Eric S. Ekstrom.

Roy F. Hall, of Rockford, Ill., for appellees.

Before SPARKS and ALSCHULER, Circuit Judges, and BRIGGLE, District Judge.

SPARKS, Circuit Judge.

This suit in equity was originally instituted against appellants by appellee's predecessor as receiver of the Manufacturers National Bank & Trust Company of Rockford, Illinois. By it, appellee sought to recover the sum of $42,716.12 paid by said Manufacturers Bank to the Third National Bank as and for a deposit in the Third National to the appellant company's credit. The money was paid on a check of appellant company drawn upon the Manufacturers Bank. The check

was drawn the day before the Manufacturers Bank finally closed its doors, and was paid through the clearing house of Rockford on the day that bank was finally closed. Appellant filed its cross complaint by which it sought to recover the balance of its deposit in the sum of $20,034.12, which appellant charges was fraudulently received by the bank and its officers and agents at times when they all knew the bank was insolvent.

The court found the facts specially and rendered its conclusions of law thereon. In addition to the proper jurisdictional facts the court found substantially as follows:

The Manufacturers Bank closed its doors at 1:30 p. m., June 13, 1931, its regular time of closing on Saturdays, and never thereafter opened its doors. On June 16, 1931, the Comptroller of the Currency certified that the bank was insolvent and appointed Achor, its former vice-president, as receiver. The Mechanics Company, appellant, is an Illinois corporation of which, for some time prior to and at all times since June 1, 1931, appellant Ekstrom was the president and active manager, spending all of his business time in connection therewith. For two years prior to June 16, 1931, he had been a director of the Manufacturers Bank. He was not an employee of the bank and spent no time and performed no duties there or in connection with its business, other than as director and as a member of the board's loan committee.

Between May 6, 1931, and June 6, 1931, the Mechanics Company had deposited with the Manufacturers Bank various sums and on various dates in the total amount of $150,872.70, and its checking account balance on June 12, 1931, was $65,224.30. It also had a savings account in the same bank on that date of $10,000. When the bank closed its doors appellant Ekstrom had a personal checking account therein of $1,413.88, and a savings account of $736.89.

On the date the bank closed it was, and for some time prior thereto had been, on a special list of the Comptroller of the Currency for examination every ninety days or oftener, of which fact Ekstrom had knowledge. At about 11 o'clock a. m., June 12, 1931, a meeting of the board of directors of the Manufacturers Bank, called by its president at the request of Mr. Baty, a national bank examiner, was held at the bank at which appellant Ekstrom was present and participated. He there learned from Baty that the Security National Bank of Rockford was unable to continue business and had made a tentative contract with the Swedish American National Bank of Rockford, by which the latter was to take over the former, subject to the appraisal of the former's assets by the latter, and if that appraisal were satisfactory the transfer would be made on Monday morning, June 15, 1931. Ekstrom was also there informed by Baty that it was the latter's opinion that the cash position of the Manufacturers Bank was extremely low and could not stand a run of one business day, and that he thought a run on all the banks would occur on Monday whether or not the Security Bank was taken over by the Swedish Bank. It was there stated by Baty in the presence of Ekstrom that in view of the continued drain of deposits which the Manufacturers Bank had and was still having, it would be for the best interests of the bank to try to arrange to take the bank's deposit liability under cover. Whereupon the board of directors, with Ekstrom's consent, gave Baty written authority to talk over the affairs of the bank with some other Rockford bank with a view to having the latter take it over. At that meeting Ekstrom knew of the contents of the Comptroller's report of an examination of their bank on December 1, 1930, and he was fully acquainted with the Comptroller's letter of January 8, 1931, which accompanied the report. In that report and letter the Comptroller gave it as his opinion that the bank had loans and discounts which were slow assets in the sum of $1,014,167.09; that there were doubtful loans and discounts to the extent of $228,173.34; and that there were losses since the last examination in the sum of $138,789.96. On June 12, 1931, Ekstrom knew that the Comptroller had requested the bank to send him a letter every thirty days indicating its condition.

The bank was examined about April 27, 1931, and a report of it, together with a letter from the Comptroller, was sent to and received by the bank on or about May 28, 1931, and both were examined by Ekstrom. The report disclosed that there were slow assets in the sum of $1,145,201.-15, and total doubtful assets of $430,821.34, and losses within the last three months of $19,795.50. It further disclosed that the directors had direct and indirect liabili-

ties in the bank of $559,620.86. The letter referred to the condition of the bank as unsatisfactory and dangerously threatening its insolvency and it demanded the directors' immediate attention.

At the board meeting of June 12, a committee was appointed by the directors to act for the bank in all matters relative to taking over its affairs by any other bank. Ekstrom left that meeting about noon, and shortly thereafter executed, as president of appellant, the check which is now in controversy, and caused it to be sent by mail late in the afternoon of that day to the Third National Bank of Rockford. Accompanying it was a deposit slip directing its deposit in appellant's general account at the Third National Bank. Theretofore, appellant had never transferred money from its checking account in the Manufacturers Bank to its general checking account in the Third National Bank. The check was received by the Third National on Saturday morning, June 13, and was included in the clearings of that day. It was paid by Manufacturers Bank on the same morning, which was the last day that bank was open, and the amount thus paid was deposited as ordered by appellant with the Third National.

About the time Ekstrom signed this check he also signed, as president, another check on behalf of appellant for $35,000, drawn by it against its general checking account in the Securities National Bank of Rockford, and it was mailed to the Rockford National Bank.

On Saturday night, June 13, a committee from the Third National, and a like committee from the Manufacturers Bank spent the entire night examining the assets of the latter bank. That fact was known by Ekstrom and he was present at the time, and he learned at the conclusion of their examination that it would take $750,000 in cash to effect a merger with the Third National. He also knew that that amount substantially corresponded to the capital, surplus, and the undivided profits of the Manufacturers Bank.

On Sunday, June 14, the Manufacturers Bank was insolvent, and by resolution of the board its affairs were placed in the hands of the Comptroller. There had been no appreciable change in its condition from June 12, 1931. From June 6 to June 13, 1931, inclusive of both days, the bank remained open and transacted its usual and ordinary banking business, accepting deposits and paying all checks drawn upon and presented to it, and during that time it was able to and did meet all its obligations as they matured. The court found that prior to the payment of the controverted check, the bank had committed no act of bankruptcy.

The court therefore concluded that the equities of the cause were with appellee, and that the cross complaint was without equity.[1] It accordingly dismissed the cross

[1] Conclusions of Law.

"(1) The equities are with the plaintiff on the original bill.

"(2) The counter-claim is without equity and should be dismissed.

"(3) The plaintiff is entitled to a decree as prayed for in the bill.

"(4) In view of the knowledge possessed by the defendant, Eric S. Ekstrom, which he had acquired because of his confidential connection with the Manufacturers National Bank, when he drew the check of the defendant corporation for $42,761.12, it would be inequitable to allow the defendant corporation to obtain the advantage which it would thereby obtain over other depositors by virtue of the knowledge which its President had acquired as aforesaid.

"(5) It is the law that by virtue of the facts above mentioned the defendant, Eric S. Ekstrom, in causing said check to be drawn and paid, said Eric S. Ekstrom being a Director of the Manufacturers * * * and occupying a confidential relation toward it when he drew said check for $42,761.12, and thereby caused a transfer of funds belonging to the defendant corporation from the Manufacturers Bank to the Third National Bank, then and there intended to prefer the defendant corporation over the other creditors of said bank and intended to prevent the assets of said bank from being distributed ratably, and that his act in so doing was in violation of Section 5242 of the Revised Statutes of the United States, and was an act done in contemplation of insolvency of said Manufacturers Bank.

"(6) In a court of equity when the defendant, Eric S. Ekstrom, on behalf of the defendant corporation signed said check and thereby caused a withdrawal of said funds he acted for said corporation, and said corporation was chargeable with what knowledge the defendant Ekstrom then possessed.

"(7) Eric S. Ekstrom, having personally signed said check and thereby caused a withdrawal of said funds, and said act being for the benefit of the defendant corporation, both said defendant corporation and said Eric S. Ekstrom became liable in a court of equity to return to the Receiv-

150

complaint, and awarded a decree for appellee against both appellants in the sum of $25,216.45, with interest and costs. That amount represented the full amount of appellee's claim less four dividends which had theretofore been ordered.

■ Appellants contend that the bill sought a recovery under section 5242, Revised Statutes (12 U.S.C.A. § 91) which provides that there can be no recovery under that section unless the payment in question was made after the bank had committed an act of insolvency, or in contemplation thereof with a view to prevent the application of its assets in the manner prescribed by the Banking Act or with a view to the preference of one creditor to another. They insist, therefore, that the decree was not justified because (1) the bank had committed no act of insolvency before the payment of the check, (2) there was no proof of insolvency, (3) none of the officers of the bank believed that the bank was insolvent when the check was paid, and (4) none of the officers, at the time the check was paid, contemplated an act of insolvency, or the closing of the bank. The court found that fact (1) was true, but, even so, that fact of itself would not invalidate the decree. The court also found that the bank was insolvent on Sunday, June 14, and that there had been no appreciable change in its condition since June 12, the day of the directors' meeting. That finding we think was supported by material evidence and we can not disturb it. It may be true that none of the officers thought it was insolvent, or contemplated an act of insolvency or the closing of the bank, but in view of the condition disclosed, and the reports and correspondence from the Comptroller, together with the advice and suggestions of the examiner, we are convinced that the officers and directors should have known that the bank was insolvent and that closing was imminent. We think the court's findings and conclusions, in so far as they bear on this question, were amply supported by the evidence.

■ But the bill did not wholly rely upon section 91 for a recovery. It also pleaded a charge of common law negligence. That this is a proper practice can not be doubted. Bowerman v. Hamner, 250 U.S. 504, 39 S.Ct. 549, 63 L.Ed. 1113.

■ It is contended, however, by appellants that the evidence conclusively shows that the check was drawn and signed before the bank directors' meeting on June 12; that Ekstrom did not order the check drawn nor divulge to the Mechanics Company or its agents any information received by him at the directors' meeting; and that neither the drawing of the check nor the money was caused by any information received from Ekstrom. Without conceding it, we shall treat the language of these contentions as tantamount to saying there was no substantial evidence to support the court's findings in these respects. It would serve no good purpose to set forth the evidence in detail. A perusal of the entire record convinces us that with respect to both appellants, the court's findings are supported by direct material evidence as well as by logical and legitimate inferences. It is further contended, however, that the court will not indulge in the presumption that Ekstrom divulged to others any information received from the bank directors' meeting. That may be conceded, but the court's findings and conclusions are not based on that presumption. That Ekstrom signed the check as president of the company after he left the bank directors' meeting is supported by material evidence, and he neither affirmed nor denied it. He was an officer and agent

er of said Bank, the funds so withdrawn.

"(8) The directors of the bank knew its condition to be as found above and placed its officers in position to pay the check in question, drawn by one possessing knowledge of the bank's condition which he acquired because he held a confidential position in the bank and thereby learned facts not known to depositors generally. The payment of the check in fact created a preference and it must be held in law the parties intended the result of their acts.

"(9) The funds of the Mechanics Universal Joint Company were not transferred from its checking account in the Manufacturers National Bank and Trust Company in the usual and ordinary course of business.

"(10) The Mechanics Universal Joint Company, through its president, Eric S. Ekstrom, who was also a director of the Manufacturers National Bank and Trust Company, knew at the time the several deposits were made by it in the Manufacturers National Bank and Trust Company, that the Manufacturers National Bank and Trust Company was in a precarious and embarrassing financial condition and hence the depositor was not an innocent depositor and no fraud was practised upon such depositor. The counterclaim cannot be sustained."

of the Mechanics Company, as well as a director of the bank, hence it was not necessary for him to divulge any information to accomplish the withdrawal of the funds. He, whose signature gave vitality to the check, already had the information when he signed it. That act was his company's act, and his information at that time was his company's information. These circumstances, we think, constitute a sufficient basis for the court's conclusions Nos. 4, 5, 6, and 7, 8, and 9.

We are further of the opinion that the court was warranted in dismissing the appellant company's counter-claim on the theory that no fraud was practiced upon it by the bank and that it was not an innocent depositor by reason of the acts of its president.

Error is assigned upon the court's admission of four exhibits offered by appellee. Two of these were copies of the bank examiner's reports on the respective dates of December 1, 1930, and May 29, 1931; one was a letter from the Comptroller to the bank, bearing date of February 24, 1931; and the other was a letter from the Comptroller to the bank, bearing date of May 29, 1931. We find no error in the admission of any of these exhibits.

Decree affirmed.